IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20513
_____

IVEY V. MYERS,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, TDCJ,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

February 22, 1996

Before KING, DEMOSS, and STEWART, Circuit Judges.

PER CURIAM:

In <u>Myers v. Collins</u>, 8 F.3d 249 (5th Cir. 1993), we reversed the district court's judgment denying Myers's habeas corpus petition and we remanded to the district court for an evidentiary hearing on whether Myers had abandoned his right to file a pro se brief on direct appeal. Upon remand and following an evidentiary hearing, the district court again denied Myers's petition for habeas corpus, finding that although Myers had not abandoned his right to self-representation on direct appeal, the denial of his right to self-representation was harmless error. Myers appeals the judgment of the district court.

# I. BACKGROUND

Ivey V. Myers ("Myers") is currently serving a twenty-five-year term of imprisonment in the custody of the Texas Department of Criminal Justice for an aggravated robbery conviction. Following his conviction, Myers asked the state district court to allow him to represent himself on appeal. The state court granted his request, but informed Myers that standby counsel would be appointed to assist Myers. Instead, the state court appointed Janet Morrow ("Morrow") as appellate counsel for Myers, without indicating to her that she was appointed as standby counsel for a pro se appeal. After the record was compiled, Morrow filed an appellate brief on Myers's behalf, alleging ineffective assistance of trial counsel and requesting that the judgment be reformed to reflect that Myers had only one, not two, previous convictions. Myers asked Morrow for a copy of the transcript, so that he could file a pro se brief, but she failed to provide him with the record. The Texas Fourteenth Court of Appeals affirmed Myers's conviction and reformed the judgment as requested in Morrow's brief. Morrow then filed a petition for discretionary review on Myers's behalf which the Texas Court of Criminal Appeals refused without opinion.

On June 29, 1989, Myers filed a federal habeas corpus petition in the district court, alleging the following:

> (1) his Fourteenth Amendment right to due process was violated by:
>     (a) the inclusion of several aliases in the indictment which prejudiced the jury,
>     (b) his in-court identification which was prompted by the prosecutor,

2

(c) his identification in an out-of-court photo spread,
(d) the victim's conflicting testimony to the jury and the police, and
(e) perjury committed by the police investigator and the reporting officer;

(2) his Sixth and Fourteenth Amendment rights to self-representation at trial and on appeal were violated;

(3) his trial counsel rendered ineffective assistance; and

(4) the evidence was insufficient to sustain his conviction.

The district court dismissed the petition on December 19, 1989, holding that Myers had not exhausted his state remedies. On December 28, 1990, this court vacated the judgment of the district court and remanded for consideration of the merits of Myers's petition.

On remand, the state filed a motion to dismiss on grounds that "sufficient evidence supported Myers's conviction, that Myers's due process rights were not violated, that Myers's counsel was not constitutionally ineffective and that there was no error in any alleged denial of Myers's right to represent himself." On October 1, 1991, the district court granted the state's motion, treating it as a motion for summary judgment, and denied Myers's petition for habeas relief.

On appeal from the district court's denial of habeas relief, this court addressed the question whether Myers had been denied his federal constitutional right to represent himself on direct appeal of his conviction. The court determined that "a state criminal defendant has a constitutional right to present pro se motions and briefs on appeal." Myers v. Collins, 8 F.3d 249, 252

3

(5th Cir. 1993).[1]  However, the court concluded that a genuine issue of material fact existed regarding whether Myers had abandoned his right of self-representation.  Id.  Thus, the court remanded for an evidentiary hearing on the abandonment issue. Id.

Following the evidentiary hearing, the magistrate judge entered recommended findings of fact and conclusions of law.  The magistrate judge concluded that Myers was denied his right of self-representation on the first appeal as of right and recommended that the writ be conditionally granted unless the Texas Court of Appeals allowed Myers an out-of-time pro se appeal on the issue of insufficiency of the evidence--the issue not raised by Morrow, his appellate counsel.  In response to the state's objections, the magistrate judge amended her report. Although the magistrate judge still found that Myers had not waived or abandoned his right of self-representation, the magistrate judge concluded that Myers had not demonstrated "substantial and injurious effect from Morrow's appellate brief," applying the harmless error standard set out for trial errors in Brecht v. Abramson, 113 S. Ct. 1710, 1716 (1993).  The district court adopted the magistrate judge's amended report and

---

[1]  In Myers, the court recognized that arguably its holding constituted a "new rule" which federal courts are usually barred from announcing in a habeas corpus case by Teague v. Lane, 489 U.S. 288 (1989).  Myers, 8 F.3d at 252 n.7.  However, because neither party had raised the Teague issue, the court declined to do so sua sponte.  Id.

4

recommendation on June 14, 1994 and denied Myers's petition for habeas corpus.  Myers filed a notice of appeal on July 12, 1994.

## II. STANDARD OF REVIEW

In reviewing requests for federal habeas corpus relief, we review the district court's findings of fact for clear error, but review issues of law de novo.  Dison v. Whitley, 20 F.3d 185, 186 (5th Cir. 1994).  A finding of fact is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed.  United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994), cert. denied, 115 S. Ct. 573.  If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently.  Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

## III. DISCUSSION

This appeal presents us with three questions.  First, we must determine whether the district court's determination that Myers did not abandon his right of self-representation on direct appeal is clearly erroneous.  Second, we must decide whether a state criminal defendant's constitutional right to present pro se

briefs on the first appeal as of right is amenable to harmless error analysis, applying the standards set forth in Arizona v. Fulminante, 499 U.S. 279 (1991). Third, if we decide that harmless error analysis applies, we must then determine whether the denial of the right of self-representation was harmless error in this case. Before we reach these questions, however, we will first discuss the existence and scope of the right to self-representation on the first direct appeal.

A.   THE RIGHT TO SELF-REPRESENTATION ON DIRECT APPEAL

   1. Existence of the Right

   The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to the assistance of counsel at trial. Gideon v. Wainwright, 372 U.S. 335, 345 (1963). Implicit in the Sixth Amendment also is the correlative right of a criminal defendant to waive the assistance of counsel and represent himself at trial. Faretta v. California, 422 U.S. 806, 819 (1975). Additionally, a criminal defendant has a constitutional right, derived from the Fourteenth Amendment guarantees of due process and equal protection, to the effective assistance of counsel on the first direct appeal from his conviction. Evitts v. Lucey, 469 U.S. 387, 396 (1985) ; Douglas v. California, 372 U.S. 353, 357 (1963).

   In Price v. Johnston, 334 U.S. 266 (1948), the Supreme Court stated that "a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate

6

court." <u>Id.</u> at 285. However, this court, distinguishing between the right to present oral argument--which <u>Price</u> determined was not "an essential ingredient of due process," <u>id.</u> at 286--and the right to present appellate briefs and motions, and following the Eighth Circuit's decision in <u>Chamberlain v. Ericksen</u>, 744 F.2d 628 (8th Cir. 1984) <u>cert. denied</u>, 470 U.S. 1008 (1985), held that "a state criminal defendant has a constitutional right to present pro se briefs and motions on appeal." <u>Myers</u>, 8 F.3d at 252.[2]

2. Standby Counsel, Abandonment and Waiver

Because we have so recently recognized the right to present pro se briefs on the first appeal as of right, we have not yet delineated the manner in which this right must be exercised. Thus, we look to the Supreme Court's decisions in <u>Faretta</u> and <u>McKaskle v. Wiggins</u>, 465 U.S. 168 (1984), addressing the right of self-representation at trial, for guidance in determining the scope of the appellate right to self-representation. In asserting the right of self-representation at trial, first a criminal defendant must knowingly and intelligently waive the right to counsel. <u>Faretta</u>, 422 U.S. at 835. Additionally, a trial court should advise a defendant asserting the right to self-representation of the dangers and disadvantages of foregoing the assistance of counsel before the court accepts his waiver. <u>Id.</u> "[A] State may--even over objection by the accused--appoint

---

[2]    We note that the state of Texas has recognized the right of a defendant to self-representation on appeal (although denying his right to present oral argument). <u>Webb v. State</u>, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976).

7

a `standby counsel' to aid the accused if and when the accused requests help . . . ." Id. at 835 n.6.

McKaskle v. Wiggins addressed "[the] role standby counsel who is present at trial over the defendant's objection may play consistent with the protection of the defendant's Faretta rights." 465 U.S. at 170. The McKaskle court established the following limitations on the participation of stand-by counsel at trial:

> First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the Faretta right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decision, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the Faretta right is eroded.
> Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.

Id. at 178.

Additionally, McKaskle recognized that a criminal defendant may abandon or waive his right to self-representation during the criminal trial. Id. at 182. "A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense." Id. Once a pro se defendant invites or acquiesces in substantial participation by standby counsel, even if he insists that he is not waiving his Faretta rights, he abandons his right to later complain that counsel interfered with his presentation of his defense. Id.

8

Applying the reasoning of <u>McKaskle</u> to an appellate situation, we hold that a criminal defendant who clearly and unequivocally asserts his right to present pro se briefs on the first direct appeal must be allowed to "preserve actual control over the case he chooses to present" to the appellate court-- i.e., he must be allowed to determine the content of his appellate brief. See <u>McKaskle</u>, 465 U.S. at 178. If standby counsel substantially interferes with a pro se appellant's presentation of his appeal--for example, by denying him access to the transcript--the right to present pro se briefs on direct appeal will be effectively denied. Of course, a criminal appellant may abandon the right to present pro se briefs on direct appeal, once asserted, by inviting or agreeing to standby counsel's substantial participation in preparation of the brief. See <u>McKaskle</u>, 465 U.S. at 182-83. Additionally, there is no constitutional right to hybrid representation. <u>See id.</u> at 168. Thus, when a criminal appellant accepts the assistance of counsel, but later objects to his attorney's appeal strategy or preparation of the brief, the criminal appellant cannot then expect to be allowed to file a supplemental pro se brief. By accepting the assistance of counsel the criminal appellant waives his right to present pro se briefs on direct appeal.

9

In the present case, the district court[3] found that Myers clearly and unequivocally asserted his right to self-representation on his first appeal as of right.[4] The state trial court, although it had orally assented to Myers's assertion of his right, effectively denied that right by appointing Morrow as appellate counsel for Myers. Additionally, the district court found that Myers did not subsequently abandon his right to self-representation on direct appeal. The state argues that the district court's finding that Myers did not abandon his right to self-representation is clearly erroneous because Myers did not advise the state court of his dissatisfaction with Morrow's

---

[3]    The magistrate judge entered an amended report and recommendation, including proposed findings of fact and conclusions of law, which the district court adopted. For the sake of simplicity, we will refer to the district court.

[4]    The district court found that "the official transcript reflects that Myers requested and received permission to represent himself on appeal," citing the following colloquy:

> MYERS: I would like at this time to file my notice of appeal.
> THE COURT: Certainly, sir.
> MYERS: I would like to also advise the Court that I'm indigent and cannot afford an attorney nor could I afford a transcript and would the Court provide me these.
> THE COURT: Certainly.
> MYERS: As well as the right to be my own lawyer.
> THE COURT: You want to be your own lawyer with no assistance from a lawyer?
> MYERS: This is what I asked the first time and also asked the second time.
> THE COURT: You may be your own lawyer, sir, but I think I'll appoint someone to stand by in case you need some assistance.

10

representation.  The next section will address the district court's findings and conclusions.

3. The District Court's Findings

The district court found the following facts:

Myers requested and received permission to represent himself on appeal.  Nevertheless, on December 18, 1986, Morrow was appointed as Myers's counsel on appeal.  The appointment form and the official court docket reflected that Morrow's appointment was standard; no mention was made that Myers had been granted the right to represent himself or that Morrow's appointment was on a standby basis.  Myers testified at the evidentiary hearing that the trial judge denied his request to represent himself.  Morrow testified that the state court did not inform her that her appointment was as standby counsel, and that she would not have accepted a standby appointment.  She testified that, in March 1987, Myers wrote to her requesting a copy of the transcript and advising her that she was representing him against his will.  She stated that he never told her that she was standby counsel, only that he wished to file a pro se brief.  Morrow did not take requests from criminal defendants for copies of the transcript seriously.  On March 19, 1987, Morrow responded to Myers's letter, informing him that she was representing him on the direct appeal and that she would begin working on the brief as soon as the record was complete.  Morrow believed that she had been appointed as appellate counsel.  Myers testified that after Morrow refused to send him the transcript, he felt it was useless

11

to object to the brief she had filed.  In December 1987, Myers filed a pro se petition for writ of mandamus before the Texas Court of Criminal Appeals, complaining that the trial judge had improperly denied his request to represent himself on appeal.

Based on these factual findings, the district court concluded that Myers did not expressly, knowingly, and intelligently waive his right to represent himself on direct appeal.  The district court determined that Myers had requested and received permission to represent himself in the direct appeal of his conviction, but that he believed that his request to represent himself had been denied.  This erroneous belief, induced by the court's written order unconditionally appointing Morrow on appeal, resulted in the denial of Myers's constitutional right to represent himself.  In answer to the state's argument that Myers abandoned his right of self-representation by failing to contact the state appellate court and advise it that Morrow had taken over his appeal, the district court stated:

> The court agrees that Petitioner could have done more to preserve his right to represent himself but cannot agree that Myers abandoned his right to self-representation under the particular facts of this case. It is significant that it was the court's order which undermined Petitioner's ability to represent himself, not any action of Petitioner.  Once counsel was appointed, the court only communicated with counsel. Because appellate counsel had been appointed, Petitioner could not have obtained a copy of the transcript which he had ordered or been allowed to file his own brief.  Based on the facts presented in this case, the State has not shown by a preponderance of the evidence that the Petitioner abandoned his right to represent himself on appeal.

12

We agree with the district court's conclusion that Myers did not abandon his right of self-representation on direct appeal. Although it may be true that to best preserve his rights Myers should have notified the state court that Morrow had taken over his appeal, the district court's factual finding that Myers believed that his request to be his own attorney had been denied is not clearly erroneous. Myers's belief that the state court had denied his request to represent himself is reasonable in light of the state district court's actions in appointing Morrow and Morrow's statement that she was representing him on appeal, as well as her refusal to deliver a copy of the transcript to Myers. This belief also explains why Myers failed to contact the state court to protest Morrow's actions.

Furthermore, at no point did Myers's invite or agree to Morrow's substantial participation in the prosecution of his appeal. See McKaskle, 465 U.S. at 182. Rather, he informed Morrow by letter that she was representing him against his will, and he asked her for the transcript so that he could prepare a pro se brief. Because Morrow was Myers's counsel of record, Myers could not have obtained a copy of the transcript or filed a brief with the appellate court directly; once counsel was appointed, the court communicated only with counsel. Although Myers did not object to the state trial or appellate courts, in December 1987, Myers filed a petition for writ of mandamus before the Texas Court of Criminal Appeals complaining that the trial

13

judge improperly denied his request to represent himself on appeal.

Myers clearly and unequivocally asserted his right to represent himself on his first direct appeal. The state district court, after orally agreeing to this request, denied Myers's right by appointing counsel to represent him. The record supports the finding that Myers did not at any time invite or agree to Morrow's participation in the appeal. Therefore, we affirm the district court's finding that Myers did not abandon his right to present pro se briefs and motions on his first appeal as of right.

B.    DOES HARMLESS ERROR ANALYSIS APPLY?

Having determined that the state court denied Myers's constitutional right to represent himself on direct appeal, and that Myers did not abandon or waive this right, we must now address the question whether violation of a state criminal defendant's constitutional right to present pro se briefs on the first appeal as of right is amenable to harmless error analysis.[5]

The United States Supreme Court has determined that harmless error analysis is appropriate for many types of constitutional

---

[5]    The state argues that because the source of the right to present a pro se brief on direct appeal flows from Texas's statutory grant of a right to an appeal as of right, the statutory basis of the right compels a harmless error analysis. Because this court held in Myers that the right to present pro se briefs on direct appeal is a constitutional right, 8 F.3d at 252, the state's argument is meritless.

14

violations.  <u>Chapman v. California</u>, 386 U.S. 18, 22 (1967).

While application of the harmless error doctrine is the rule and

not the exception, <u>see</u> <u>Rose v. Clark</u>, 478 U.S. 570, 578 (1986),

some constitutional violations require automatic reversal

regardless of harm.  <u>Chapman</u>, 386 U.S. at 23.

In <u>Arizona v. Fulminante</u>, the Supreme Court distinguished

the types of constitutional errors amenable to harmless error

analysis from those requiring automatic reversal by denominating

the former, "trial errors," and the latter, "structural defects."

499 U.S. 279, 307, 309 (1991).  "Trial errors" are errors "which

occur[] during the presentation of the case to the jury."  <u>Id.</u> at

307-08.  Trial errors are subject to harmless error analysis

because they may be "quantitatively assessed in the context of

other evidence presented in order to determine whether [the

error] was harmless beyond a reasonable doubt."[6]  <u>Id.</u>

In contrast, the Court described those constitutional errors

which require automatic reversal as "structural defects in the

constitution of the trial mechanism."  <u>Id.</u> at 309.  Structural

errors affect "the framework within which the trial proceeds,

rather than simply an error in the trial process itself."  <u>Id.</u> at

310.  The total deprivation of the right to counsel at trial is a

---

[6] In <u>Brecht v. Abramson</u>, 113 S. Ct. 1710 (1993), the Supreme
Court announced that the "harmless beyond a reasonable doubt"
standard would no longer apply to analysis of the effect of trial
error in a habeas corpus context.  <u>Id.</u> at 1722.  Rather, the new
standard for determining whether habeas relief must be granted
for trial error is whether the error "had substantial and
injurious effect or influence in determining the jury's verdict."
<u>Id.</u>

15

paradigmatic example of a structural constitutional error that can never be harmless, as is the violation of the right to self-representation at trial. Id. at 309; Chapman, 386 U.S. at 23, n.8; McKaskle, 465 U.S. at 177 n.8. The denial of the right to self-representation on direct appeal cannot be considered a structural defect, because it has no effect on the criminal trial itself. For similar reasons, the denial of the right to self-representation on direct appeal also does not fit neatly in the category of trial errors, because it does not occur during the presentation of the case to the jury.

In McKaskle v. Wiggins, the Supreme Court determined that the Faretta right to self-representation at trial was not amenable to harmless error analysis, applying a rationale other than the trial error/structural defect dichotomy:

> Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

McKaskle, 465 U.S. at 177 n.8.

Prior to the Supreme Court's decision in McKaskle, this court had also recognized that "the nature of the right to defend pro se renders the traditional harmless error doctrine peculiarly inapposite." Chapman v. United States, 553 F.2d 886, 891 (5th Cir. 1977). In Chapman, we recognized that the defendant's right to represent himself is protected not "out of the belief that he thereby stands a better chance of winning his case, but rather out of deference to the axiomatic notion that each person is

16

ultimately responsible for choosing his own fate, including his position before the law.  A defendant has the moral right to stand alone in his hour of trial and to embrace the consequences of that course of action."  Id.

The Second Circuit expanded on the Supreme Court's McKaskle rationale and our reasoning in Chapman in reaching the conclusion that denial of the right of self-representation cannot be harmless:

> The right to self-representation derives principally from interests beyond ensuring that trial outcomes are fair.  The Sixth Amendment's right to self-representation reflects values of individual integrity, autonomy, and self-expression.  Violation of the right to self-representation sacrifices these values even in the absence of effect on the outcome of the trial.
> Application of harmless error analysis is particularly inappropriate to denial of the right to self-representation because a harmless error standard would, in practical effect, preclude vindication of the right.  Since seasoned appointed counsel can almost invariably provide better legal representation that a pro se defendant, denial of a request to proceed pro se could rarely, if ever, be shown to have been prejudicial.

Johnstone v. Kelly, 808 F.2d 214, 218 (2d Cir. 1986), cert. denied, 482 U.S. 928 (1987).

We find that the reasons that harmless error analysis is inappropriate for denial of the right to self-representation at trial apply equally to the denial of the constitutional right to present pro se briefs on the first appeal as of right.[7]  The

_____

[7]     We recognize that the constitutional right to present pro se briefs on direct appeal stands on different constitutional footing than the right to self-representation at trial.  See Myers, 8 F.3d at 252 n.4.  The Supreme Court determined that the right to self-representation at trial is implicit in the

17

right to present pro se briefs on direct appeal, as the right to

self-representation at trial, arises from the fundamental belief

_____

structure of the Sixth Amendment.  <u>Faretta</u>, 422 U.S. at 821.  The
right to self-representation at trial is thus the complement to
the Sixth Amendment right to the assistance of counsel at trial.
     However, the Sixth Amendment does not protect the right to
counsel on appeal.  Rather, if a right to appeal is granted by a
state, the Fourteenth Amendment Due Process and Equal Protection
Clauses demand that the effective assistance of retained or
appointed counsel on appeal also be provided.  <u>See</u> <u>Evitts v.
Lucey</u>, 469 U.S. at 396.  We may assume then that the
constitutional right to self-representation on direct appeal, as
the complement to the constitutional right to counsel on direct
appeal, is derived from the Fourteenth Amendment Due Process
guarantee.  Therefore, while the right to self-representation at
trial is a Sixth Amendment right; the right to present pro se
briefs on direct appeal is a Due Process right.
     Although determining the constitutional source of the right
to present pro se briefs on the first appeal as of right is an
important step in recognizing the right, whether the right is a
Sixth Amendment or a Due Process right does not affect the
determination of whether the right is amenable to harmless error
analysis.  There are Sixth Amendment and Due Process rights the
violation of which constitute trial errors subject to harmless
error analysis.  <u>See</u> <u>Fulminante</u>, 499 U.S. at 307 (citing, <u>inter
alia</u>, <u>Delaware v. Van Arsdall</u>, 475 U.S. 673 (1986) (restriction
on a defendant's right to cross-examine a witness for bias in
violation of the Sixth Amendment Confrontation Clause); <u>Hopper v.
Evans</u>, 456 U.S. 605 (1982) (statute improperly forbidding trial
court's giving a jury instruction on a lesser included offense in
a capital case in violation of the Due Process Clause); and
<u>Coleman v. Alabama</u>, 399 U.S. 1, 10-11 (1970) (denial of counsel
at a preliminary hearing in violation of the Sixth Amendment
Counsel Clause)).  Similarly, there are Sixth Amendment and
Fourteenth Amendment rights the violations of which have been
held to be structural defects requiring automatic reversal.  <u>See</u>
<u>Fulminante</u>, 499 U.S. at 309-10 (citing, <u>inter alia</u>, <u>Vasquez v.
Hillery</u>, 474 U.S. 254 (1986)(unlawful exclusion of members of the
defendant's race from a grand jury in violation of the Equal
Protection Clause); <u>McKaskle v. Wiggins</u>, 465 U.S. 168 (1984)
(denial of the Sixth Amendment right to self-representation at
trial); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963) (total
deprivation of the Sixth Amendment right to counsel at trial);
and <u>Tumey v. Ohio</u>, 273 U.S. 510 (1927) (trial before a judge with
a financial interest in conviction in violation of the Due
Process Clause)).  Therefore, the fact that the right to present
pro se briefs on the first appeal as of right is a Due Process
right does not affect our determination whether violation of the
right is amenable to harmless error analysis.

18

that a criminal defendant should not have counsel forced upon him.  See Myers, 8 F.3d at 252.  Constitutional protection of the right to represent oneself on direct appeal preserves the values of individual autonomy and freedom of choice.  See Faretta, 422 U.S. at 833-34 ("And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice."); Chapman, 553 F.2d at 891 ("[E]ach person is ultimately responsible for choosing his own fate, including his position before the law."). Violation of the right to present pro se briefs sacrifices these values regardless of the effect of the violation on the outcome of the appeal.  See Johnstone, 808 F.2d at 218.  The violation of the constitutional right to self-representation on direct appeal, limited to the right to present pro se briefs and motions, is not amenable to harmless error analysis.[8]

Therefore, we cannot affirm the district court's judgment denying Myers's petition for writ of habeas corpus because he failed to show injurious effect from Morrow's brief or that his pro se brief would have resulted in reversal of his conviction. The denial of Myers's right to represent himself on direct appeal is reversible error.  However, the appropriate remedy is an opportunity to present an out-of-time pro se appellate brief to the state court of appeals.  See Lombard v. Lynaugh, 868 F.2d

---

[8]    Because we determine that the constitutional right to present pro se briefs on appeal is not amenable to harmless error analysis, we do not reach our third question--whether the denial of Myers's right to self-representation on appeal was harmless error.

19

1475, 1484 (5th Cir. 1989) (determining that the appropriate remedy for ineffective assistance of counsel on direct appeal was a conditional grant of a writ of habeas corpus unless the state court would grant the petitioner an out-of-time appeal); see also Stubbs v. Leonardo, 973 F.2d 167, 169 (2d Cir. 1992) (granting writ unless the state appellate court allows the filing of a pro se brief).  Thus, we order the district court to conditionally grant Myers's petition for writ of habeas corpus unless the Texas Fourteenth Court of Appeals allows Myers an opportunity to present an out-of-time pro se appellate brief.

## IV. CONCLUSION

Accordingly, we REVERSE the judgment of the district court, and we REMAND to the district court with instructions to enter judgment granting the writ of habeas corpus unless the state affords Myers an opportunity to present an out-of-time pro se appellate brief within such reasonable time as the district court may fix.

REVERSED AND REMANDED.