UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-11136

_____

LACY A MAYBERRY,

Plaintiff-Appellant,

v.

TARRANT COUNTY COMMUNITY SUPERVISION
AND CORRECTIONS DEPARTMENT; KEN BARNES;
ROBERT GUNTER; DONALD R SMITH,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas, Fort Worth
4:97-CV-933-Y

_____

March 26, 2002

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This appeal is from a district court's grant of summary judgment in favor of an employer in

a race discrimination case. We affirm the district court's grant of summary judgment with respect

to the appellant's claim of discrimination arising under 42 U.S.C. § 2000e *et seq.* (Title VII) and 42

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. § 1981. We affirm the district court's dismissal of the appellant's retaliation claim under Title VII and modify it to read with prejudice.

Lacy Mayberry was a probation officer in the Southeast Field Services Unit of the Tarrant County Community Supervision and Corrections Department ("the Department"). In this position, he was responsible for the supervision of several hundred misdemeanor probationers. Between 1994 and 1996, Mayberry made several complaints to the Department concerning the treatment of minority probation officers in his unit. In 1994, Mayberry informed his supervisor, Ken Barnes, and the Department's Human Resources Director, Robert Gunter, that he had observed disparate treatment of minorities within his unit. Specifically, Mayberry asserted that minority officers in the unit (1) were more often targets for verbal abuse by Barnes and Kim Lowery, Mayberry's immediate supervisors, (2) received less assistance from supervisors and were less likely to be assigned student interns, (3) received larger case loads, and (4) were more often required to perform "housekeeping" tasks. In October 1995, Mayberry filed a separate grievance against Kim Lowery because she told him during a heated conversation that "she was gonna wait for my black behind to get off work and then hurt me." In August 1996, Mayberry filed a complaint with the EEOC based on these grievances. The EEOC dismissed the complaint, however, and Mayberry declined to file a private action on his own.

During this period, Mayberry was also the subject of several disciplinary actions. In June 1994, Mayberry received a first level discipline because he failed to report that two of his probationers did not appear for a scheduled meeting.[1] In February 1995, Mayberry received a second level discipline because one of his probationers filed a complaint alleging that he had engaged her in

---

[1] Mayberry asserts that probation officers commonly fail to report such violations and that it is exceptionally rare for officers to receive a written reprimand for such an error.

an inappropriate conversation concerning her religious beliefs and her relationship with her boyfriend in violation of the Department's ethics code. In March 1996, Mayberry received a third level discipline because another probationer alleged that he made inappropriate comments concerning her sexual lifestyle.[2]

In May 1997, a fellow probation officer filed a complaint alleging that Mayberry made inappropriate sexual remarks to her at work. The Department immediately suspended Mayberry with pay (later relabeled "administrative leave") and, one month later, terminated his employment. Mayberry filed a complaint with the EEOC alleging that the Department terminated him based on his race and in retaliation for his complaints of discrimination. The EEOC issued a Notice of Right to Sue in August 1997. Mayberry also appealed his termination to a panel of Tarrant County district judges. The panel reinstated Mayberry but declined to award him back pay and ordered the Department to assign him and the complaining co-worker to different offices.

In November 1997, Mayberry filed a complaint against the Department, Barnes, Gunter, and Donald Smith alleging various Title VII violations and violations of 42 U.S.C. §§ 1981 and 1983. In a May 14, 1998 order, the district court dismissed Mayberry's Title VII claims against the individual defendants, his § 1983 claims against all defendants, and his § 1981 claims against the Department and the individual defendants in their official capacities. In a May 14, 1999 order, the district court granted summary judgment on Mayberry's § 1981 claims in favor of Gunter and Smith in their individual capacities. Finally, on June 15, 2000, the district court granted summary judgment in favor

---

[2] According to Mayberry, the probationer did not file the complaint until five months after her case had been transferred from Mayberry to either Lowery or Barnes. Mayberry suggests that Lowery and/or Barnes persuaded the probationer to file the complaint as a means of retaliating against him for his complaints.

of the defendants with respect to Mayberry's Title VII claim against the Department and his § 1981

claim against Barnes. The court's June 15 order also dismissed without prejudice Mayberry's claim

of retaliation against the Department because Mayberry "failed to exhaust his administrative remedies

for that claim." Mayberry filed a notice of appeal.

STANDARD OF REVIEW

Mayberry appeals the district court's grant of the appellees' motion for summary judgment.[3]

This Court evaluates a district court's decision to grant summary judgment by reviewing the record

under the same standards the district court applied to determine whether summary judgment was

appropriate. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). Therefore, the summary

judgment will be affirmed only when this Court is "convinced, after an independent review of the

record, that `there is no genuine issue as to any material fact' and that the movant is entitled to

judgment as a matter of law.'" *Id.* (quoting *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United

States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir. 1987) and Fed.R.Civ.P. 56(c)). Fact questions

must be considered with deference to the nonmovant. *Herrera,* 862 F.2d at 1159. Thus, if a fact

question is dispositive of a motion for summary judgment, "we must review the facts drawing all

inferences most favorable to the party opposing the motion.'" *Id.* (quoting *Brooks,* 832 F.2d at 1364).

Questions of law are reviewed *de novo. Id.*

DISCRIMINATION

---

[3] Mayberry filed the instant lawsuit *pro se* and later retained counsel who withdrew. Mayberry filed *pro se* a brief before this Court. We appointed appellate counsel and will address only the arguments raised in counsel's brief. *Cf. Myers v. Johnson,* 76 F.3d 1330, 1334 (5th Cir. 1996) (explaining that, in the context of a criminal appeal, an appellant who accepts the assistance of counsel waives his right to present *pro se* briefs).

The required showing to be made by any Title VII plaintiff is familiar: the plaintiff bears the burden of establishing a *prima facie* case of discrimination; upon such a showing, the burden shifts to the defendant(s) to articulate some legitimate, non-discriminatory reason for the challenged employment action; if such a showing is made, then the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext to unlawful discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

To establish a *prima facie* case of race discrimination under Title VII and 42 U.S.C. § 1981, the plaintiff must show: "(1) that he is a member of a protected group; (2) that he was qualified for the position held; (3) that he was discharged from the position; and (4) that he was replaced by someone outside of the protected group." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).[4]

The district court held that Mayberry had failed to demonstrate a *prima facie* case of racial discrimination because he had failed to demonstrate that he was qualified for the position. We disagree.[5] Mayberry introduced evidence regarding his college degree and prior work experience.

---

[4] The same basic framework applies to claims under Title VII and to claims under 42 U.S.C. § 1981. *See Byers*, 209 F.3d at 422 n.1 ("Claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability." (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). The appellees argue that Mayberry abandoned his § 1981 claim on appeal. We find that Mayberry's brief adequately raises the § 1981 claim against Barnes in his individual capacity.

[5] The appellees argue that Fifth Circuit precedent indicates that an employee may become unqualified during the course of employment and thus, Mayberry cannot rely on the fact that he was qualified for the position when he was hired. Mayberry responds that the appellees' argument misconstrues his burden and improperly conflates the two distinct inquiries, *i.e., prima facie* case and evidence of pretext. Specifically, Mayberry argues that he was not required to negate allegations of misconduct or unsatisfactory performance as part of his *prima facie* case. There appears to be conflicting language in our case law with respect to this issue. In *Sreeram v. Louisiana State Univ. Medical Center,* 188 F.3d 314, 318-20 (5th Cir. 1999), this Court indicated that a plaintiff's poor

5

Before joining the Department as a probation officer in 1992, Mayberry earned a B.A. in sociology from Angelo State University and worked as a social worker for more than two years at the San Angelo State School. In addition, Mayberry points to Ken Barnes's statement in a 1995 performance review that he "has sufficient knowledge of his job and the law" and his 1997 performance review which provided that he met expectations and that his job performance had improved. Indeed, the review board's decision to reinstate Mayberry after his discharge is evidence that he was qualified for the position. Contrary to the district court's conclusion, Mayberry brought forth sufficient competent summary judgment evidence to show that he was qualified for his position as a probation officer. With respect to the other elements, it is undisputed that Mayberry is a member of a protected group, that he was discharged from the position, and that he was replaced by someone outside of the protected group. Mayberry has satisfied his burden of establishing the elements of a *prima facie* case.

Thus, the next question is whether Mayberry presented sufficient evidence showing that the Department's reasons for firing him were a pretext for discrimination. The Department argues that it terminated Mayberry "for his failure to comply with the Department work rules, Criminal Justice Assistance Division (CJAD) Code of Ethics, and the agency's sexual harassment policy." Mayberry

---

performance during her surgical residency outweighed her objective qualifications as a matter of law. Previously, however, in *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1505-06 (5th Cir. 1988), this Court explained that placing plaintiff's qualifications in issue at both the *prima facie* case and pretext stages in termination cases is redundant. We explicitly stated that a plaintiff challenging his termination or demotion can ordinarily establish a *prima facie* case of discrimination by showing that she continued to possess the necessary qualifications for her position at the time of the adverse action. *Id.* at 1506. We explained that this meant simply that the plaintiff "had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Id.* at 1506 n.3. In any event, we need not tarry here because Mayberry brought forth sufficient evidence to establish he was qualified under either analysis.

6

apparently concedes (and we agree) that the appellees met their burden of articulating a legitimate, non-discriminatory reason for the challenged employment action.

Mayberry contends that he presented sufficient circumstantial evidence to create a jury question concerning whether the Department's reasons were pretextual. The district court granted the Department's summary judgment motion, holding in the alternative that Mayberry "failed to present competent . . . evidence demonstrating that Defendants intentionally discriminated against him on the basis of [h]is race." The court noted that Mayberry's affidavit describing instances of discrimination was insufficient to create a genuine issue of material fact because it "evidences only his subjective belief that he has been discriminated against on the basis of his race."

Once the plaintiff establishes a *prima facie* case of discrimination and the employer offers non-discriminatory reasons for terminating the plaintiff, "the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiffs on the basis of race." *Pratt v. City of Houston, Tex.,* 247 F.3d 601, 606 (5th Cir. 2001). *See also Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000) ("The ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142-43 (2000)). Although the Supreme Court has noted that it is "*permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," the Court also noted that an employer may be entitled to judgment as a matter of law where "no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. For example, an employer may be entitled to judgment as a matter of law "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the

7

plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

Mayberry asserts that supervisors in his unit targeted minority employees for greater verbal abuse, less assistance, and larger caseloads than non-minority employees. Mayberry's observations are fairly generalized, contested by the Department, and find no independent support in the record. In short, these observations constitute little more than Mayberry's subjective belief that the Department discriminated against him. As a general rule, "'a subjective belief of discrimination'" is insufficient to support a discrimination claim only where "'it alone st[ands] against unimpeached and uncontradicted opposing testimony.'" *Evans v. City of Bishop,* 238 F.3d 586, 590 n.7 (5th Cir. 2000) (citations omitted). Mayberry argues that he also presented evidence that the Department's justifications for his discharge are false--that is, evidence that he was not actually fired for violations of Department rules. Specifically, Mayberry relies on a 1996 performance review indicating that the "overall quality of Lacy's work has improved significantly"[6] and a 1997 review noting satisfactory performance and continued improvement. Although Mayberry did receive relatively positive evaluations in 1996 and 1997, his performance is essentially unrelated to the sexual harassment charge that was the immediate cause of his termination.

Mayberry also challenges the motivations behind the Department's disciplinary actions against him. In his affidavit, Mayberry asserts that the Department disregarded his explanations for the rules violations for which he was disciplined and, instead, credited the uncorroborated assertions of the complaining probationers and co-worker. Further, according to Mayberry, non-minority employees typically received the benefit of the doubt when faced with similar allegations of misconduct.

---

[6] In 1995, Mayberry's evaluation indicated that he was performing "below expectations."

8

Mayberry also alleges that the appellees treated him more harshly than they treated similarly situated non-black employees. Specifically, he asserts that the appellees investigated similar complaints against two white male employees (Bob Williams and Stephan Ateek), and those employees were not suspended or terminated. The defendants responded that Stephan Ateek was not white.[7] The defendants further assert that Ateek was not similarly situated in that the charge of sexual harassment was not sustained after an investigation. With respect to Bob Williams, the defendants assert that Mayberry, who was charged with sexual harassment, was not similarly situated because Williams was charged with making inappropriate racial and sexist remarks. After an investigation, Williams was disciplined and demoted; however, the board of judges reinstated him to his prior position. We conclude that Mayberry has not shown that he was similarly situated to the other employees inasmuch as there is no indication that they had disciplinary histories sufficiently similar to Mayberry's. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000) (requiring "nearly identical" circumstances and noting that "striking differences" between two situations accounted for different treatment), *cert. denied,* 531 U.S. 1145 (2001).

In further support of his discrimination claim, Mayberry identifies two derogatory remarks made by Lowery and Gunter[8] and the fact that the Department notified Mayberry of his termination

---

[7] It is not clear but it appears Ateek is a non-black minority.

[8] As set forth previously, Lowery told Mayberry in 1996 that "she was gonna wait for my black behind to get off work and then hurt me." Also, in a separate incident after Mayberry was reinstated in 1997, Gunter (who is an African-American male) told Mayberry that he was "tired of black officers complaining" and that they should "find another job" because the complaints would not be heeded. The Department responds that Lowery was no longer Mayberry's supervisor at the time of his discharge and that the remarks are insufficient to create an issue of material fact because neither Gunter nor Lowery "possessed leverage, or exerted influence, over the decision making authority" responsible for Mayberry's termination. Of course, the Supreme Court has explained that requiring evidence of discriminatory animus to be "in the direct context" of the employment decision is

on June 19th, the date on which Texas celebrates the "Juneteenth" holiday recognizing the freeing of slaves in that state.

After reviewing the record and briefs, we conclude that Mayberry has failed to bring forth "sufficient evidence" for a jury to reasonably conclude that the Department's reasons for termination are unworthy of credence and are a pretext for discrimination. *See Crawford*, 234 F.3d at 902-03. More specifically, in light of Mayberry's admission of the conduct with respect to the first disciplinary action and the fact that two probationers under his supervision and a co-worker accused him of improper conduct in the work place, we are not persuaded that Mayberry presented sufficient evidence to refute each of the proffered nondiscriminatory reasons for his termination to raise a genuine issue of fact regarding whether the reasons were a pretext for discrimination. Accordingly, the district court did not err in granting the Department's motion for summary judgment with respect to the discrimination claims.

RETALIATION CLAIM

In its order granting motions for summary judgment, the district court dismissed Mayberry's retaliation claim without prejudice because he had failed to exhaust his administrative remedies. However, as Mayberry asserts, his allegations of retaliation stem from earlier charges of discrimination and his subsequent EEOC filing. Accordingly, "it [was] unnecessary for [him] to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge[.] [T]he district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State University,* 654 F.2d 411, 413 (5th Cir. Unit A 1981). Thus, the district court erred in dismissing the retaliation claim

---

incorrect. *Reeves,* 530 U.S. at 151.

10

for failure to exhaust administrative remedies.

Mayberry further asserts that the district court's erroneous determination regarding exhaustion necessitates reversal of the summary judgment regarding the claim of retaliation. We are not persuaded. "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254, 258 (5th Cir. 2001).

The appellees contend that the retaliation claim involving denial of a raise was not properly before the district court. We agree. In his first amended complaint, Mayberry alleged that he was denied a raise after filing his 1996 charge of discrimination with the EEOC. With respect to his 1996 charge, the EEOC issued a notice of right to sue on May 3, 1996, informing Mayberry that he must file suit within 90 days from the receipt or his right to sue would be lost. *See* 42 U.S.C. § 2003-5(f)(1). The instant lawsuit was filed November 6, 1997, well beyond the 90-day period, and Mayberry does not argue that the period was tolled. *See Espinoza v. Missouri Pacific R. Co.,* 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). Thus, Mayberry's claim of retaliation involving the denial of a raise is time-barred and should have been dismissed with prejudice. *See Berry v. CIGNA/RSI-CIGNA,* 975 F.2d 1188, 1191 (5th Cir. 1992) (explaining that the dismissal of a time-barred claim is with prejudice). We therefore modify the district court's dismissal of the retaliatory denial of a raise claim to be with prejudice.

Mayberry next asserts that although the defendants explicitly moved for summary judgment on his retaliatory claim based on the denial of a raise, they did not move for summary judgment based on the retaliatory discharge claim. Mayberry thus argues that the district court erred in *sua sponte* granting summary judgment with respect to the retaliatory discharge claim because it failed to afford

11

Mayberry notice or opportunity to respond.[9] The record reflects otherwise. On December 11, 1998, the defendants filed a motion for partial summary judgment that contained a section entitled "Mayberry Has Not Stated a *Prima Facie* Case of Intentional Discrimination or Retaliation Against the Individual Defendants." In that section, the defendants argued that because Mayberry was terminated for "clearly not meeting the expectations of his employer," he had failed to establish a *prima facie* case for discrimination. The defendants concluded the section by asserting that "[f]or the same reasons he has not established a causal connection between the termination and his filing an EEOC charge of harassment." Under these circumstances, we believe that the defendants sufficiently moved for summary judgment with respect to Mayberry's claim of retaliatory discharge. Thus, Mayberry incorrectly asserts that the district court *sua sponte* granted summary judgment with respect to this claim.

We now turn to the merits of the retaliatory discharge claim. To demonstrate a claim for retaliation, an employee must prove (1) that they engaged in an activity that was protected; (2) an adverse employment action occurred; and (3) a causal connection existed between the participation

---

[9] The appellees respond that Mayberry has "waived any argument regarding his retaliatory discharge claim" by failing to properly raise his objections in district court. This Court has held that "where the party against whom summary judgment is granted moves for reconsideration under Fed.R.Civ.P. 59(e), but does *not,* in that motion, challenge the procedural propriety of the summary judgment ruling, our court has reviewed the asserted procedural irregularity, raised for the first time on appeal, *only* for plain error." *Love v. National Medical Enterprises,* 230 F.3d 765, 771 (5th Cir. 2000) (emphasis in original) (citations omitted). We note that this requirement is applicable only to procedural challenges and is not applicable to challenges regarding the merits of the claims. *Id.* Mayberry, proceeding *pro se* at that particular time during the district court proceedings, did not precisely raise the instant procedural objection in his motion for new trial. However, he clearly argued that the district court's grant of summary judgment was premature in light of his request for discovery. In any event, as set forth below, because we determine that the appellees had properly moved for summary judgment with respect to Mayberry's claim of retaliatory discharge, we need not determine whether the motion for new trial adequately challenged the procedural propriety of the district court's *sua sponte* grant of summary judgment.

in the activity and the adverse employment action. *Webb v. Cardiothoracic Surgery Assoc*, 139 F.3d 532, 540 (5th Cir. 1998). The framework for analyzing a retaliation claim is identical to the framework utilized in the context of employment discrimination. *Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir. 2001). "[O]nce the plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). Lastly, the plaintiff must "'adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation.'" *Id.* (quoting *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998)). We have explained that to meet this final burden the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the protected activity. *Id.[11]*

First, Mayberry's allegation of retaliatory discharge stems from earlier charges of discrimination and his subsequent EEOC filing. This Court has explained that filing an administrative complaint is clearly protected activity. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995) (explaining that "[t]here can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity"). Thus, the first prong is satisfied. Second, adverse employment actions include "hiring, granting leave, discharging, promoting, and compensating." *Dollis,* 77 F.3d at 782. Mayberry's discharge satisfies the second prong.

Third, the question is whether Mayberry demonstrated that a causal connection existed

---

[11] Although Mayberry correctly contends that he need not show "but for" causation to establish a *prima facie* case, he is required to make such a showing once the defendants have articulated a legitimate, nondiscriminatory reason for the discharge. *Evans v. City of Houston,* 246 F.3d 344, 354-55 (5th Cir. 2001).

between the filing of the EEOC charges and his termination. Mayberry offers the following evidence or assertions to establish a causal connection. During a heated discussion with his immediate supervisor, Kim Lowery, she stated that she "would wait until it was time for his `black behind' to go home and she `would hurt' him." Lowery denied saying "black behind," apparently claiming that she misspoke or Mayberry misunderstood her. After being reinstated after termination, another supervisor, Gunter, stated he was "'tired of black officers complaining' and they should just 'find another job' because nothing was going to come of their complaints." Gunter also queried "what were the black officers going to do, 'let the white management drive the black officers crazy?'" Upon returning after his termination, supervisor Barnes informed Mayberry that "they had won, and he had lost." While the appeal of his termination was pending, Mayberry claims a Dallas County probation officer informed him that the Department was actively soliciting complaints against him from probationers and other probation officers.

Assuming for the purposes of this appeal that Mayberry has demonstrated a *prima facie* case of retaliatory discharge, the burden shifts to the appellees to articulate a legitimate, nondiscriminatory reason for Mayberry's discharge. In the district court, the defendants adduced the following evidence: Mayberry (1) received a first level discipline on June 23, 1994 for failing to timely report two probation violations prior to the expiration of the probationers' terms of supervision; (2) received a second level discipline on February 14, 1996 for engaging in an inappropriate conversation with a probationer concerning her cohabitation with a man and her religious beliefs; (3) received a third level discipline on March 15, 1996 for again engaging in an inappropriate conversation with another probationer concerning her sexual orientation and religious beliefs. Additionally, the Department received a complaint against Mayberry from a fellow probation officer alleging sexual harassment.

14

After an investigation, Mayberry was terminated. We conclude that the appellees have shouldered their burden of articulating a legitimate, nondiscriminatory reason for Mayberry's discharge. We further conclude that, in light of his disciplinary history and the complaints levied against him by both probationers under his supervision and a co-worker, Mayberry has failed to shoulder his burden of demonstrating that his discharge would not have occurred but for his charge of discrimination. Therefore, we modify the district court's dismissal of the retaliation claim to read dismissed with prejudice.

CONCLUSION

For the above reasons, we AFFIRM the district court's grant of summary judgment with respect to Mayberry's claims of discrimination. The district court's dismissal of Mayberry's retaliation claim is MODIFIED to read DISMISSED WITH PREJUDICE. AFFIRMED AS MODIFIED.