IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50226
_____


JOSEPHINE RIOS,

                                    Plaintiff-Appellant,

                         v.

CHARLES O. ROSSOTTI, Commissioner
of the Internal Revenue Service;
UNITED STATES OF AMERICA,
Department of the US Treasury,

                                    Defendants-Appellees.

                    ---------------------------------
                    Appeal from the United States District Court
                         for the Western District of Texas
                    ---------------------------------

                              May 17, 2001

Before, KING, Chief Judge, ALDISERT[*] and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

     Plaintiff, Josephine Rios, brought claims of discrimination

and retaliation against the Internal Revenue Service ("IRS" or

"Service") based on her non-selection for position vacancies

within the agency.  On appeal, she contends that the district

court erred in granting summary judgment against her claims.

Plaintiff argues that she created a genuine issue of material

_____

     [*]Circuit Judge of the Third Circuit, sitting by designation.

fact as to the Service's motives in not selecting her to fill the position vacancies. We AFFIRM the judgment of the district court.

BACKGROUND

Rios filed her original complaint in federal court on September 23, 1998. Plaintiff filed her Second Amended Complaint, the one at issue in the present case, on April 1, 1999 alleging discrimination based on age, race, national origin, and gender and retaliation for engaging in activities protected under Title VII. Defendant, the IRS Tax Commissioner, filed a motion to dismiss the Second Amended Complaint based on Plaintiff's failure to name the Secretary of the Treasury as the proper party in the suit. Plaintiff acknowledged her error and the district court granted leave to amend the complaint. Defendant then filed for summary judgment against Plaintiff's underlying claims. Plaintiff filed a response and sought leave to file a Third Amended Complaint.

The district court denied Plaintiff's motion to file a Third Amended Complaint, ruling that Plaintiff was "attempting to bring in causes of action which were not considered administratively, or were the focus of agency grievance processes or prior EEO complaints. As such, she is precluded from bringing them in this cause of action." At this time, the district court also denied Defendant's motion for summary judgment against Plaintiff's claims. However, upon later reconsideration, the district court

2

granted Defendant's motion as to all of Plaintiff's claims. The district court concluded that Plaintiff was unable to link the allegedly unfriendly atmosphere at the IRS to her non-selection. Moreover, the alleged negative comments toward Plaintiff made by individuals not connected to the selection process and the subjective perceptions of her co-workers that she had been treated unfairly were insufficient to raise a fact issue on pretext. Plaintiff filed a timely notice of appeal from the district court's dismissal.

## FACTS

Plaintiff joined the Internal Revenue Service, a division of U.S. Treasury Department, in 1984. Plaintiff began her employment with the Service as a tax analyst. Based on her performance during the first year, the IRS was prepared to terminate her. In partial settlement of an EEO complaint filed by Plaintiff, she was retained by the Service but demoted to the position of group secretary. She worked as a group secretary until she was promoted to accounting aide six months prior to her application for the current vacancies. During her employment with the IRS, Plaintiff filed a number of grievances with the EEO and her union. These grievances alleged that she was discriminated against in her annual performance reviews and she was improperly denied awards, promotions, and pay because of discrimination. She filed her instant suit when she was not selected to fill two job vacancies for which she applied.

3

Generally, the IRS conducts its hiring through the posting of vacancy announcements. A vacancy announcement contains a description of the position, its requirements, and potential posts of duty in which the position will be created. In August 1994, the IRS posted two vacancy announcements, one for positions as a Tax Auditor and one for positions as an Internal Revenue Agent. The announcements stated that the number of positions to be filled was "1 or more." In posting its vacancy announcements, the IRS listed several posts of duty in Texas including Austin, San Antonio, Corpus Christi, El Paso, Harlington, and McAllen. Interested candidates were to submit their performance appraisal for the past year and an application setting forth their relevant education, training, and experience. The applicants were also to designate the posts of duty for which they were applying. Plaintiff's application listed San Antonio and Corpus Christi. Originally, the Service designated four tax auditor positions for Austin, two for San Antonio, two for El Paso, one for Corpus Christi, one for McAllen, and one for Harlington. After the applications were accepted, but before a hiring decision was made, the IRS transferred the Corpus Christi opening to Austin and the Harlington opening to San Antonio.

According to affidavits submitted by Defendant, there were 145 applicants for the Tax Auditor position and there were 70 applicants for the Internal Revenue Agent position. In order to narrow the field of applicants, a three-member ranking panel

4

created a Best Qualified List. The criteria for the List included scores from the applicant's past performance review, awards received, and a third less concrete prong defined as potential for success. The third prong considered past job experience, education, training, and other indicators of future success in the position.[1] Based on their scores under the criteria above, the applicants for each post of duty were rank ordered. A pre-determined number of applicants were then included on the Best Qualified List. The Best Qualified List was given to the two selection officials with the ultimate decision-making authority. The selection officials chose employees from the Best Qualified List to fill the vacancies.

Plaintiff ranked fourth out of five candidates for the Corpus Christi tax auditor position and eighth out of twelve candidates for the San Antonio tax auditor position. The Best Qualified List for Corpus Christi included the top four candidates; thus, Plaintiff made the List. However, as discussed previously, the Service elected to transfer the Corpus Christi opening to Austin. Notably, the tentative position in Harlington was also transferred to another city, San Antonio. Because there

---

[1] The affidavit of Ms. Chinn, a ranking panel official, stated that "[t]he best qualified applicants received higher ratings of potential because they had recent experience and excellent performance in very technical positions, including tax auditor, taxpayer service, engineering and higher graded tax examiner positions."

is no evidence that such decisions were improperly motivated, we consider Plaintiff's claims only as to the openings in San Antonio. Plaintiff did not make the Best Qualified List for San Antonio. She challenges this omission on several grounds: first, the ranking panel improperly discounted her education, experience, and training based on discrimination and retaliation; and second, she was discriminated and retaliated against in her performance evaluations and receipt of awards, both of which were substantial factors in compiling the Best Qualified List.

### ANALYSIS

We review a district court's decision to grant summary judgment de novo, applying the same familiar standard in Federal Rule of Civil Procedure 56(c). *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In so doing, we view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000). In support of its motion for summary judgment, Defendant submitted affidavits from the three members of the ranking panel and the two selectors. The affidavits describe the selection process as objective and impartial. Each panelist and selector swears that Plaintiff's race, gender, age, or prior complaints to the EEO had no bearing in the hiring decision. One ranking official does, however, acknowledge that she was aware of

6

Plaintiff's prior involvement in the EEO process.

### *Discrimination Claim*

Rios' claims of discrimination are governed by the tripartite burden-shifting test established by *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-04, 83 S.Ct. 1817 (1973). Under this test, if Rios establishes a prima facie case of discrimination, the burden shifts to the Service to articulate a legitimate, non-discriminatory reason for not selecting Rios. *Id.* If the Service satisfies this burden, the burden shifts back to Rios, who must prove that "the legitimate reasons offered by the defendant [for not selecting her] were not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct. at 2104-05. Plaintiff can establish pretext either directly, by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In either respect, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 120 S.Ct. at 2106 (citing *Burdine*, 450 U.S. at 253). In addition to discrimination claims based on race and national origin, Plaintiff brought claims for age and gender discrimination. She presents no evidence supporting these latter claims. The district court, therefore,

7

properly dismissed them.

In order to establish a prima facie case of discrimination based on race or national origin, a plaintiff must usually show that (1) she suffered an adverse employment action; (2) she was qualified for the position; (3) she was within the protected class at the time of the decision; and (4) the person selected was not within the protected class. Plaintiff satisfies the first three prongs. As to the fourth prong, the IRS concedes that while they promoted and hired numerous Hispanic employees to fill openings throughout the state, there was at least one position for which Plaintiff applied that a Hispanic applicant was not selected. Thus, Plaintiff has made her prima facie case.

Moving beyond Plaintiff's prima facie case, Defendant has met its burden of producing a non-discriminatory reason for Plaintiff's demotion. In this regard, Defendant relies on its procedures for creating the Best Qualified List to show that Rios was not as qualified for the desired positions as were those selected. This contention satisfies Defendant's burden as it "is one of production, not persuasion . . . [and] can involve no credibility assessment." *Reeves*, 120 S.Ct. at 2106. As is usually the case, the focus then becomes the third part of the *McDonnell-Douglas* test – whether Plaintiff met her burden of showing that Defendant's explanation was merely a pretext for the actual reason she was not selected – discrimination.

As evidence of discrimination, Plaintiff offers her own affidavit and those of several past and current IRS employees. Their testimony tends to show that a general atmosphere hostile towards Hispanic employees existed at the IRS; specific comments had been made by IRS officials about Rios and her accent; and Rios was perceived by coworkers to be highly competent. In her own affidavit, Plaintiff testifies about numerous EEO complaints, union grievances, and lawsuits she has filed since 1985. Defendant is correct in its response that Plaintiff cannot use this forum to litigate these prior claims. The issue though is whether these prior allegations serve as competent evidence as to the question presented in this matter – whether Defendant discriminated in not selecting Plaintiff for the Best Qualified List. On this issue, the past allegations coupled with the affidavit testimony could evince of a pattern of discrimination sufficient to undermine Defendant's non-discriminatory reason. *See McDonnell-Douglas*, 411 U.S. at 804-05, 93 S.Ct. 1817, 1826 ("[E]vidence that may be relevant to any showing of pretext includes . . . [the company's] general policy and practice with respect to minority employment."); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482 (1983) (holding that because "[t]here will seldom be 'eyewitness' testimony to the employer's mental process," evidence of the employer's discriminatory attitude in general is

9

relevant and admissible to prove discrimination).

Ultimately, however, Plaintiff has failed to carry her burden. In determining whether summary judgment was appropriate, we consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 120 S.Ct. at 2109. Plaintiff's evidence of racial discrimination is presented in her own testimony and that of Olivia Saenz and Raymund Gil Villanueva. The Supreme Court has assessed the value of discriminatory remarks by examining whether the remarks indicated invidious animus and whether the speaker of the remarks was "principally responsible" for the adverse employment action. *See Reeves*, 120 S.Ct. at 2110; *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (stating that "[t]he value of [discriminatory] remarks is dependent upon the content of the remarks and the speaker" (citing *Reeves*)). The strongest evidence presented by Plaintiff is the declaration of Ms. Saenz. Ms. Saenz cites many disparaging and racially insensitive remarks made by individuals within the Service, including managers and supervisors. None of these remarks, however, are attributed to individuals with decision making authority in this case (the three-member ranking panel). In addition, Plaintiff did not

10

present evidence that could lead a rational jury to find that the individuals who uttered those remarks possessed leverage, or exerted influence, over the panel. *See Russell*, 235 F.3d at 227 (stating that "it is appropriate to tag the employer with an employee's [discriminatory] animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker"). Thus, Plaintiff failed to create a jury issue that Defendant's proffered reason was a pretext for discrimination. *See Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000) (discussing evidentiary burden on Plaintiff to overcome summary judgment).

### *Retaliation Claim*

Plaintiff also argues that her failure to be selected was in retaliation for engaging in activities protected under Title VII. Title VII makes it unlawful for an employer to discriminate against an employee "because [that employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Hence, once the plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a

11

legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  Finally, the plaintiff must then "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."  *Id.*

For retaliation claims, this final burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred "but for" the protected activity.  *Id.*  Thus, even if retaliation was a motivating factor in not selecting Plaintiff, "no liability for unlawful retaliation arises if the employee would [not have been selected] even in the absence of the protected conduct."  *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  As applied to the present case, Plaintiff must produce evidence showing that "but for" retaliation, she would have made the Best Qualified List for the San Antonio vacancies.  Defendant contends that Plaintiff cannot make the required "but for" showing because those individuals selected were more qualified than Plaintiff.  This Court affords a high degree of deference to employers in their hiring and promotion decisions.  In order to be probative on the issue of retaliation, "the qualifications [must be] so widely disparate that no reasonable employer would have made the same decision." *Deines v. Texas Dept. of Protective Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999).

In this case, Plaintiff faces an uphill battle in showing

12

that the ranking panel retaliated against her in compiling the Best Qualified List. On its face, the factors used in creating the List are rational and non-discriminatory. Plaintiff argues that in applying those factors, the panel discounted her qualifications and experience in retaliation for her prior filings. She notes that none of the applicants who made the Best Qualified List had prior EEO activity. As evidence of Defendant's retaliatory motive, Plaintiff offers her own testimony and the affidavits of other current and former IRS employees – Olivia Saenz, Raymund Gil Villanueva, Cynthia T. Alvarado, Linda Chavez, Guadalupe Ramos, and Jane Castillo.[2] The affidavits contain numerous alleged instances of retaliation within the IRS. A jury could not reasonably conclude that the affidavits are sufficient to demonstrate pretext for retaliation in this case. Evidence of retaliation in other circumstances may of course be probative as to pretext; however, such evidence creates only a weak issue of pretext when it is unsupported by evidence reflecting more precisely on the situation at issue in the case. As these affidavits did not concern the individuals

---

[2] The district court afforded very little weight to Plaintiff's affidavits concluding that they "represent nothing more than conclusory statements relating to anecdotal allegations of discrimination generally in the Department of the Treasury." Further, that the declarations therein "are largely beyond the personal knowledge of the declarant and contain impermissible hearsay as well as improper speculation and opinion testimony of lay witnesses" and the statements would be largely inadmissible at trial.

alleged to have retaliated against Plaintiff or the selection process regarding Plaintiff, they create, at best, a very weak inference of pretext.  Thus, these affidavits alone are insufficient to create a genuine issue of material fact as to whether Defendant's proffered reason was a pretext for retaliation against Plaintiff.

The argument that Plaintiff's qualifications were discounted is further belied by the affidavit testimony that Plaintiff failed to make the Best Qualified List because of her admittedly low scores on the objective – evaluations and awards – rather than subjective - experience, education, and training - components of the Best Qualified List.[3]  We understand that Plaintiff argues that the evaluations and awards are subjective, in that they reflect the subjective impressions of her supervisors.  Nonetheless, insofar as the committee was not involved in determining the evaluations or awards, these factors were objective in their hands.  Plaintiff's argument concerning the subjectivity of her supervisors is addressed fully in the discussion of the "rubber stamp" exception below.  If any of the

_____

[3]Ms. Margie Maxwell testified that Plaintiff scored favorably in the third "potential for success" category, however, "due to her average performance evaluation and no awards, she did not have an overall score high enough to make the Best Qualified list."  The third ranking official, Mr. Abba Rabbani, testified that her previous experience and other factors helped her overall ranking potential, and as such "it appears the reason she did not make the BQL, is because her evaluation was lower in comparison to others and she did not have any Awards."

14

criteria were manipulable by the ranking panel, it was the subjective components in the third prong. Plaintiff scored well, however, on these aspects. It was the objective factors where she suffered. Although Plaintiff received good evaluations during her tenure with the Service, those selected consistently received the highest rating of five in the evaluation's categories. In an attempt to cast doubt on the qualifications of those selected, Plaintiff characterizes two of the employees selected for the tax auditor position as "secretaries." This characterization is unfair and misleading, given that Plaintiff was only promoted from secretary to auditing aide six months prior to her application. Considered in total, Plaintiff's evidence does not refute the IRS' claim that it applied the three criteria uniformly to the applicants, nor does it refute the claim that the individuals selected exceeded her qualifications under those criteria.

### *"Rubber Stamp" Exception*

Given the information presented to the ranking panel, their decision was clearly reasonable. Indeed, Plaintiff argues that the submitted evaluation scores and lack of awards, when plugged into the ranking panel's formula, virtually compelled them to leave Plaintiff off the Best Qualified List. Plaintiff argues that employees who file EEO complaints are consistently given lower evaluations by their supervisors, evaluations which, in the

15

hands of the ultimate decision maker, can be used as an "objective" basis for denying them future promotions.  We recognize the potential for abuse inherent in this situation both as to retaliation and discrimination claims.

Under such circumstances, this Court has employed a "rubber stamp" analysis to prevent employers from insulating themselves from the acts of subordinates.  Typically, "statements by non decision makers, or statements by decision makers unrelated to the decisional process itself [do not] suffice to satisfy the Plaintiff's burden."  *Price Waterhouse v. Hopkins*, 490 U.S. 227, 277 (1989) (O'Connor, J., concurring).  Statements of non decision makers become relevant, however, when the ultimate decision maker's action is merely a "rubber stamp" for the subordinate's recommendation.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2001).  Thus, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker."  *Id*. at 226; *see also Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997) ("[T]here can be situations in which the forbidden motive of a subordinate employee can be imputed to the employer because, under the circumstances of the case, the employer simply acted as the 'cat's paw' of the subordinate.").  Where an evaluation is the sole basis or comprises a substantial

16

basis on which the decision maker acts, the evaluation may often constitute sufficient influence to fall under the "rubber stamp" exception.

Plaintiff argues that the formula's heavy reliance on evaluations and awards, which are both determined by supervisors, forces the ranking panel to essentially "rubber stamp" the supervisor's recommendations in ranking applicants for the Best Qualified List. The ranking panel's affidavit testimony concedes that if it were not for the low evaluation scores and lack of awards, Plaintiff would have made the Best Qualified List. We need not decide whether sufficient influence existed in the present case. Even if the ranking panel was acting as a "rubber stamp," Plaintiff did not present evidence with respect to discrimination or retaliation in her evaluation's scores or her failure to receive awards – none of Plaintiff's affidavits allege discriminatory remarks or retaliatory behavior by the supervisors providing her evaluations or awards. Plaintiff's only claim is that her most recent evaluation violated the requirements of the union contract because her manager had supervised her for less than 90 days. Her complaint that the evaluation violated agency policy is insufficient to sustain a claim under Title VII. Although she argues that she was rated unfairly in the evaluation, she presents no evidence of retaliatory or discriminatory animus. Plaintiff has thus failed to present evidence from which a reasonable jury could infer that the

current employment decision was the result of a reason that was a pretext for discrimination or retaliation.

CONCLUSION

Plaintiff alleges she was denied one of several vacancies within the IRS because of discrimination and retaliation. Plaintiff's evidence consists almost entirely of unproven claims of past conduct by the IRS. While such evidence may sometimes be probative on the issue of intent, it is insufficient here to sustain Plaintiff's respective burdens of showing that (1) Defendant's proffered non-discriminatory reason was a pretext for discrimination and (2) "but for" retaliation Plaintiff would have been selected. Accordingly, we AFFIRM the judgment of the district court.