United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 27, 2005**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-20365
Summary Calendar
_____

TERRY LOUIS STEWART

            Plaintiff - Appellant

      v.

MISSOURI PACIFIC RAILROAD COMPANY; MISSOURI PACIFIC RAILROAD
COMPANY, doing business as Union Pacific Railroad; UNION PACIFIC
RAILROAD; UNION PACIFIC RAILROAD COMPANY; UNION PACIFIC RAILROAD
CORPORATION

            Defendants - Appellees
_____

Consolidated with

                        _____

                          No. 04-20470
                        Summary Calendar
                        _____

CEDRIC EMANUEL

            Plaintiff - Appellant

      v.

MISSOURI PACIFIC RAILROAD COMPANY; MISSOURI PACIFIC RAILROAD
COMPANY, doing business as Union Pacific Railroad; UNION PACIFIC
RAILROAD; UNION PACIFIC RAILROAD COMPANY; UNION PACIFIC RAILROAD
CORPORATION

            Defendants - Appellees
_____

            Appeals from the United States District Court
               for the Southern District of Texas
                  Nos. H-02-4854 & H-02-4851
_____

- 1 -

Before KING, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:[*]

Terry Stewart and Cedric Emanuel, Plaintiffs-Appellants, each brought a Title VII suit against his employer, Defendant-Appellee Union Pacific Railroad Company, claiming discrimination and retaliation. In each case, Union Pacific filed a motion for summary judgment, and the court granted summary judgment in favor of Union Pacific on all claims. Stewart and Emanuel each appealed the district court's judgment, and they have since consolidated their appeals. We AFFIRM.

## I. BACKGROUND

### A. Factual Background

Plaintiffs-Appellants Terry Stewart and Cedric Emanuel (collectively "appellants"), both of whom are African American, are machinists employed by Defendant-Appellee Union Pacific Railroad Company ("Union Pacific"). They work at the Settegast locomotive shop, located in Houston, Texas.

On July 10, 2001, a white Union Pacific employee circulated an e-mail entitled "New York City – revised high school proficiency exam." This e-mail presents a series of math problems built around situations that reflect demeaning

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

stereotypes of African Americans and other minority groups. The employee responsible for distributing the e-mail was disciplined, receiving five days of unpaid suspension and two years of probationary employment.

To counter what they felt was an inadequate response to the e-mail incident, as well as a generally discriminatory work environment, on September 27, 2001, the appellants, other Union Pacific employees, and several community members participated in a rally to protest what they viewed as the disparate treatment of white and minority employees at the Settegast facility. The rally was peaceful and, except for a brief incident, did not take place on Union Pacific property.

On October 2, 2001, Union Pacific sent a letter to the employees' union stating that the rally violated company policy because it took place on Union Pacific property. The letter went on to list the employees, including the appellants, who participated in the rally while on Union Pacific property. Despite the letter, no disciplinary action was taken against any of the employees mentioned in the letter.

On October 17, 2001, Stewart, Emanuel, and a third employee, Leopoldo Ramirez, left the Settegast facility for lunch without apprising their supervisor. Employees at the Settegast facility are allowed to leave for lunch, but must first inform their supervisor. Whether they leave the facility or not, employees are limited to twenty minute lunch breaks. The three employees

were gone for one hour and twenty minutes.  They claimed that car problems delayed their return and that they unsuccessfully attempted to telephone their supervisors to inform them of the delay.

On October 19, 2001, the appellants and Ramirez received letters informing them that they were being charged with leaving company property without notifying their supervisors and failing to correct their time sheets to account for the extra hour lost on their lunch trip.  The letters informed the employees that, pending an investigation, they faced a Level 5 disciplinary action, meaning they could be terminated.[1]  However, if the three employees waived their rights to an investigation, they would only face a Level 2 disciplinary action.  A Level 2 sanction amounts to a year of probationary employment.  Part of this deal was that the offer was only good if all three employees and a fourth employee, who was facing discipline for an unrelated incident but also participated in the September 27 rally, agreed to accept the deal.  All four employees accepted the deal.  As a result, Stewart received one year of probation.  Because Emanuel was already on a Level 2 sanction for a previous violation of company policy, he was upgraded to a Level 3 sanction.  In addition to facing a year of probation, he was also suspended

_____

[1]     Union Pacific has a formal disciplinary system in which various violations of company rules correspond to different discipline levels.  Higher discipline levels correspond to more severe punishment.

from work without pay for five days.

## B. Procedural Background

In early 2002,[2] the appellants filed charges with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that they were discriminated against based on their race and that they were punished in retaliation for their participation in the rally. Following receipt of their right to sue notices from the EEOC, on December 19, 2002, the appellants brought separate suits in the United States District Court for the Southern District of Texas.[3] They asserted claims of unlawful racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[4] They additionally brought state law claims of negligent supervision, negligent retention, and intentional infliction of emotional distress.

Following discovery, Union Pacific filed a motion for summary judgment in each cases. The court granted Union Pacific's motion. Stewart and Emanuel each filed a notice of

---

[2]     Emanuel filed his claim on January 29, 2002. Stewart filed his claim on February 5, 2002.

[3]     Although the appellants brought separate suits that were heard by different judges, they were represented in district court by the same attorney who filed substantially similar pleadings in both cases.

[4]     In its motions for summary judgment, Union Pacific addressed a disparate impact claim. However, in looking at the appellants' original complaints, the appellants did not propound this cause of action. Thus, we do not consider it here.

appeal, and they later chose to consolidate their appeals. The appellants appeal only the district court's judgments as to the Title VII claims.

**II.    STANDARD OF REVIEW**

**A.    Summary Judgment Standard of Review**

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 190 (5th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); FED.R.CIV.P. 56 (c). The initial burden to demonstrate the absence of a genuine issue concerning a material fact is on the movant. <u>Celotex</u>, 477 U.S. at 324. Upon showing that there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the non-movant to establish that there is a genuine issue of material fact. <u>Id.</u>

**B.    The <u>McDonnell Douglas</u> Framework**

The burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), governs the appellants' disparate treatment and retaliation claims. <u>See</u> <u>Byers v. Dallas Morning News, Inc.</u>, 209 F.3d 419, 427 (5th Cir. 2000) ("As this Court has held, the <u>McDonnell Douglas</u> test applied to Title VII disparate treatment cases is also applicable

to Title VII unlawful retaliation cases."). Under the McDonnell Douglas approach, the plaintiff has the initial burden of proving a prima facie case by a preponderance of the evidence. Id. To establish a prima facie case for discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone not of the protected class or others similarly situated were more favorably treated. See, e.g., Okoye v. Univ. of Tex. Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). The prima facie case for retaliation requires the plaintiff to show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).

The adverse employment action required under both causes of action must be an ultimate employment decision along the lines of hiring, granting leave, discharging, promoting, or compensating. Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995). Phrased differently, an ultimate decision must be "[a] tangible employment action constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant proffers such a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination.  Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 138-42 (2000)).  Throughout, the ultimate burden of persuasion remains with the plaintiff.  Reeves, 530 U.S. at 143.

### III.    ANALYSIS

The district court found that neither appellant could prove the prima facie case for either discrimination or retaliation.  Specifically, the court found that a sanction of one year of probation was not an ultimate employment decision, since neither employee faced termination, demotion, or a loss of benefits.  With respect to Emanuel's claim, the court recognized that he lost five days of pay as a result of his suspension.  However, it noted that the suspension was the result of "stacking the discipline imposed for violating the lunch policy on top of Plaintiff's pre-existing disciplinary level.  Even then, the suspension is not on par with hiring, firing, failing to promote, or reassignment with significantly different responsibilities."

Emanuel v. Mo. Pac. R.R. Co., Civil No. H-02-4851, slip op. at 12 (S.D. Tex. Mar. 22, 2004).

The appellants do not argue that the district court overlooked evidence raising a genuine issue as to whether probation was an adverse employment action.  Instead, they attack this court's prior decisions on the issue of what constitutes an adverse employment action under Title VII.  The court below relied on Dollis, 77 F.3d at 777, for the proposition that only ultimate employment decisions constitute adverse actions under Title VII.  In Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997), this court stated that absent a change in the law, Dollis is binding precedent on all future Fifth Circuit panels.  The appellants argue that the Supreme Court's decision in Ellerth represents such a change in the law.[5]  In Ellerth, the Court stated that an adverse employment action must be "a significant change in employment status."  Ellerth, 524 U.S. at 761.  Appellants claim that this court has yet to consider adequately how this statement should impact our Title VII jurisprudence.

We find the appellants' argument unavailing.  Even if we

---

[5]     In their reply brief, the appellants also argue that, at least for retaliation actions, the ultimate employment action requirement in Title VII should be broadened so as to conform with the requirements for a retaliation cause of action brought under 42 U.S.C. § 1983.  Because this argument was raised for the first time in the reply brief, we deem it waived.  See Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 879 n.18 (5th Cir. 2004).

were to accept, arguendo, the argument that our definition of an adverse employment action is inconsistent with <u>Ellerth</u>, on its own terms, <u>Ellerth</u> does not broaden the definition far enough to cover the appellants' probation.  As mentioned above, <u>Ellerth</u> defines a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Ellerth</u>, 524 U.S. at 761.  The appellants' probation did nothing to alter their employment status.  On probation, they received the same pay and held the same job responsibilities.[6]  The only impact the probation had was that if the appellants violated company policies during their year of probation, they would face stiffer discipline for the violation than they would have if they were not on probation.  As long as they both continued to do their jobs and abide by company policies, the probation would have no impact on them whatsoever.  Thus, <u>Ellerth</u> is of no help to appellants.

## IV.  CONCLUSION

For the foregoing reasons, the judgments of the district court are AFFIRMED.

---

[6]     For the reasons stated by the district court, we find that Emanuel's loss of five days of pay does not impact our "adverse employment action" analysis.  The discipline solely attributable to the October 17 lunch incident did not result in his loss of pay.