# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 14, 2012

No. 11-30979
Summary Calendar

Lyle W. Cayce
Clerk

DIANNA N. JONES,

Plaintiff–Appellant,

v.

LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:10-CV-372

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Dianna Jones sued her former employer, the Louisiana Department of Health and Hospitals (DHH), alleging that she was terminated for racially discriminatory reasons and in retaliation for refusing to assist clients in obtaining benefits for which they were not qualified. The district court granted summary judgment to DHH. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30979

## I

Dianna Jones worked for DHH as a social services counselor. During her employment, she was promoted and assigned to the Patient Assistance Program at the Red River Mental Health Clinic, where she was the only African-American employee. Though the parties dispute her exact responsibilities, her job involved completing applications for patients to obtain pharmaceuticals free of charge.

When Jones began working at the Red River facility, an incident occurred between her and a coworker who was required to share a workspace with her, with the coworker allegedly showing hostility to Jones by slamming cabinet doors and drawers. The two met with a supervisor, and the coworker apologized. Jones indicated in her deposition that she did not consider this hostility to be related to her race.

Jones asserts that she was subjected to racial slurs while at work. Specifically, she cites the frequent use of the phrase "shoot a monkey," which another employee claimed was used as a replacement for profanity but which Jones took to be a racial comment. Though Jones alleged in her complaint that she "voiced her concerns" about the phrase, she stated in her deposition that she did not report it to a supervisor.

Jones also alleges that she was pressured to use her position to obtain pharmaceutical benefits for patients who did not qualify for the program. She contends she eventually lost her job because she "stood up to the nursing staff at Red River" on the issue and because of her race. DHH counters that her termination resulted from a combination of factors, including a suspended driver's license, being late to work and leaving early, performing outside employment during work hours, and a lack of proper documentation in her files. Jones was replaced by a white female.

After her termination, Jones contacted the Equal Employment Opportunity Commission and received a right to sue letter. She then brought

2

No. 11-30979

this action for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964.[1]  The district court granted summary judgment to DHH because Jones had not presented sufficient evidence that the non-discriminatory reasons for her termination proffered by DHH were pretextual.  The court further found no discrimination in her allegations of racial slurs and also concluded that she had not made a prima facie showing of retaliation, so it dismissed those claims as well.  Jones appeals those determinations.

## II

We review the district court's grant of summary judgment de novo.[2] Summary judgment is proper when the evidence reflects no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] To draw this conclusion, we rely on materials in the record, including depositions, documents, and affidavits; "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."[4] We view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.[5]

## III

Title VII makes it unlawful for an employer "to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

---

[1] 42 U.S.C. §§ 2000e-2, 2000e-3.

[2] *Crawford v. Formosa Plastics Corp., La.,* 234 F.3d 899, 902 (5th Cir. 2000).

[3] FED. R. CIV. P. 56(a).

[4] *Id.*; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted).

[5] *Crawford*, 234 F.3d. at 902.

such individual's race, color, religion, sex, or national origin."[6] A plaintiff may prove discrimination by direct or circumstantial evidence; in the absence of direct evidence, as in this case, the claim is analyzed under the framework provided by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[7] Under *McDonnell Douglas*, Jones must establish a prima facie case of discrimination, at which point the burden shifts to DHH to provide a legitimate, non-discriminatory reason for its actions.[8] If DHH meets its burden, Jones then bears the burden of demonstrating that DHH's reasons were actually a pretext for a racially discriminatory decision.[9] "A plaintiff may establish pretext . . . by showing that the employer's proffered explanation is false or 'unworthy of credence,'" meaning that it was "not the real reason for the adverse employment action," at which point an inference of discriminatory motive is typically permissible.[10]

The district court concluded that Jones had established a prima facie case with respect to her termination and assumed without deciding that she had also done so with respect to the racial slurs. Neither of these determinations is at issue on appeal. This appeal instead challenges the district court's determinations on the latter two *McDonnell Douglas* steps.

## A

Jones asserts that the district court erred in finding that DHH presented legitimate, non-discriminatory reasons for her termination because the reasons

---

[6] 42 U.S.C. § 2000e-2(a)(1).

[7] *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[8] *See McDonnell Douglas*, 411 U.S. at 802-03.

[9] *See id.* at 804-05.

[10] *Laxton*, 333 F.3d at 578 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

were "false." She also challenges the district court's decision that Jones had failed to present sufficient evidence of pretext. Because an "employer satisfies the burden of production regardless of the persuasive effect of the proffered reason,"[11] and because doing so triggers the plaintiff's obligation to establish pretext, we treat these as one issue: whether Jones has presented evidence that, taken as a whole, would allow a trier of fact to conclude that the actual reason for the discharge was discriminatory.[12]

DHH provided four non-discriminatory reasons for Jones's termination. First, DHH discovered that, due to Jones's failure to pay a traffic ticket, Jones's driver's license had been suspended, she lacked car insurance, and a bench warrant had been issued. Because she sometimes drove on state business, DHH required Jones to reinstate her license and provide documentation, which she did. Jones does not contest that she had these issues, arguing only that the problem was taken care of immediately and asserting (without argument) that DHH could not "justify its termination of Plaintiff based on a fabricated criminal record."

The second reason identified for Jones's termination was problems with her attendance at work, including arriving late, leaving early, and not calling in when she was sick. Jones claims that she was permitted travel time to and from work and allowed to forego her lunch break to leave early because of her school-age children, at least until she began resisting the nurses' demands to fill out applications for unqualified patients. At that point, she says, she met with her supervisor, and the timing issue was excused due to her misunderstanding the policy. DHH, for its part, provided a copy of a "verbal warning" issued to Jones that informed her that leaving early was "unacceptable and could be falsifying

---

[11] *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 976 (5th Cir. 1996) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-17 (1993)).

[12] *See Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996).

legal documents" and required her to email her supervisor when she arrived and left each day. The warning was dated August 1, 2008. DHH also supplied an email sent by Jones's supervisor in December of that year referring to Jones's continued issues with timing in and out. With respect to Jones's alleged failure to call in sick, she stated in an affidavit that she "always called" when she was sick. Beyond that, she provided a copy of one email from a coworker to Jones's supervisor informing him that Jones had called in sick on that day and had been instructed to call and speak directly to the supervisor.

DHH further claims that Jones's termination was in part due to her performing outside work while on the job. DHH did not have a policy against outside employment, and Jones disclosed her self-employment as a realtor on the appropriate state form. Jones's supervisors, however, noted that she spent her work hours working on her real estate business instead of her state job, including viewing seminars and talking on her cell phone, and one supervisor asserted that "he had to redirect [her] focus during work hours" when he observed her engaged in outside activity. Jones insisted in an affidavit that she never viewed online seminars, only did "online review of anything" during her lunch break, and "rarely" used her cell phone.

The final reason given for Jones's termination was a lack of proper documentation in Jones's work files. Her supervisor performed a random audit and determined the documentation was "lacking," which combined with the other issues to lead to her dismissal. Jones did not dispute this reason other than to say she documented in accordance with her training.

Ultimately, Jones does not dispute that her driver's license was suspended or that her documentation failed an audit. While she contends that her leaving early was excused by her supervisor, she does not contest the issuance of a warning to her or the validity of the email indicating the problems had not been resolved several months later. She denies her supervisors' specific allegations

No. 11-30979

that she pursued her real estate business while at work (other than during her lunch break), though she does not argue against their perception that her "focus" needed to be addressed.

Jones's contentions do not suffice to carry her burden of showing a genuine issue of material fact on the issue of pretext. Her partial rebuttals of DHH's proffered reasons would not permit a jury to conclude that those were "not the real reason[s] for the adverse employment action." Consequently, there is no basis for inferring a discriminatory motive and no basis for allowing the claim to go to trial. The district court properly granted summary judgment on this claim.

**B**

Jones does not appear to argue that the alleged racial slurs relate to her claim for termination. Instead, the district court analyzed that allegation as a separate discrimination claim. Because DHH failed to challenge Jones's prima facie case on that claim, the district court, while noting that it was "hard-pressed to find an adverse employment action occurred" with regard to that claim, assumed one had occurred. Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.[13] However, Jones has not provided any evidence of discrimination. We assess "the value of discriminatory remarks by examining whether the remarks indicated invidious animus and whether the speaker of the remarks was 'principally responsible' for the adverse employment action."[14] Without a showing that the speaker of such remarks was a decisionmaker or had

---

[13] *See McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007).

[14] *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

No. 11-30979

influence over a decisionmaker, a plaintiff cannot show discrimination.[15] Jones does not even attempt to make such a showing, so her claim of discrimination on these grounds must fail.

Alternatively, the parties' briefs refer to this claim as one of a "racially discriminatory environment," but neither party cites any law on this issue. The district court expressly noted that Jones never claimed that the phrase "shoot a monkey" resulted in a hostile work environment, but to the extent that Jones makes such a claim, we agree with the district court that she cannot succeed on it. To determine whether an environment is "hostile" requires looking at all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[16] "Conduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."[17] DHH provides an affidavit of a supervisor stating that the phrase had been used at the facility since before Jones began working there and was meant as a replacement for profanity. Jones received a similar explanation from her coworkers, and she does not present any evidence, other than her personal belief, to the contrary. Further, she does not cite any other potentially discriminatory conduct as contributing to a hostile environment. To the extent that she makes this claim, it cannot survive summary judgment.

---

[15] *Id.* at 379-80 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)).

[16] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[17] *Id.* at 21 (emphasis added).

No. 11-30979

**IV**

Jones also argues that the district court erred in denying her claim that she was subjected to unlawful retaliation by DHH for her failure to approve certain clients for benefits. Retaliation claims, like discrimination claims, are analyzed under the *McDonnell Douglas* framework when they are based on circumstantial evidence.[18] To establish a prima facie case, "the plaintiff must establish that (1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[19]

"'Protected activity' is defined as opposition to any practice *rendered unlawful by Title VII*, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[20] Jones does not allege that she participated in any activity of this type, instead arguing that opposition to *any* unlawful action qualifies as protected activity, a proposition for which she cites no relevant authority. Jones also does not attempt to show a causal connection between any protected activity and her termination. As a result, she fails to make a prima facie case of retaliation.

\*    \*    \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[18] *McCoy*, 492 F.3d at 556.

[19] *Id.* at 556-57.

[20] *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (citing 42 U.S.C. § 2000e-3(a)) (emphasis added).