# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50214

CHARLES BURTON CRISP,

      Plaintiff - Appellant

v.

SEARS ROEBUCK & COMPANY; SEARS HOLDINGS CORPORATION;
ROBERT HOSIER,

      Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-962

Before BENAVIDES, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

      Charles Crisp appeals the district court's order granting summary judgment in favor of Sears Roebuck & Company, Sears Holdings Corporation, and Robert Hosier on his Title VII and Texas Labor Code claims of national origin discrimination and retaliation.  We AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50214

## I.

Crisp was a regional sales manager at Sears from 2004 until 2011.[1] His responsibilities included supervising the district and store managers in his region, which encompassed about 75 stores, and also ensuring the profit margins and merchandising standards for each store. During Crisp's employment, Sears had a strict markdown policy that required the district managers to report markdowns every Thursday to Sears's Accounting Center in Dallas. Markdown reports were to reflect, among other things, merchandise that was lost, went missing, or was damaged. By Crisp's own admission, however, in 2010 he ordered his district managers not to take markdowns without his approval, even if losses had been sustained, to increase the region's profit margins.[2] In November 2010, the Divisional Vice President of Finance for Home Services, Steve Ferrone, discovered that the stores in Crisp's region were reporting unusually low markdowns. As a result, Ferrone instructed Paul Jankowski, the National Loss Prevention Manager, to look into whether Crisp had violated company policy. In the following months, Jankowski and other Loss Prevention associates investigated Crisp's markdown practices.

In February 2011, Crisp learned that during the investigation Jankowski had told another employee, Jacob Solis, that Crisp was managing the region "like Hitler," the district managers were "like Nazis," and that they were treating the store managers "like Jews." Crisp is of German heritage, although there is no indication that his ancestry was apparent or ever discussed. Jankowski also purportedly remarked that he was Polish and that

---

[1] Because of the summary judgment stance, this recitation takes facts in the light most favorable to Crisp.

[2] During Crisp's deposition he was asked, "If others were to say that you— your efforts to manage markdowns, your own, were intended to increase the region's gross margin dollars or profit, would you disagree?" He answered, "I would agree."

No. 15-50214

he was "going to get that bastard Charlie Crisp." A week later, Crisp confronted Jankowski directly about the Hitler and Nazi comments. In March 2011, he also made a complaint to Sears's Office of Compliance and Ethics. This complaint made no mention of the Hitler or Nazi comments or any other comments that could be construed as national origin discrimination; rather, Crisp expressed concerns that Jankowski threatened his personal safety and that the markdown investigation was not confidential. With the investigation still ongoing in April 2011, Crisp was paid a $16,001.60 bonus as a result of his region's profit margins. The investigation finally concluded in May 2011. As a result of its findings that Crisp had violated Sears's markdown policy, Pam Balistee, one of Sears's Human Resource Directors, and Robert Hosier, then a National Director of Operations, terminated Crisp's employment.

After exhausting EEOC procedures, Crisp brought this lawsuit against Sears Roebuck and Co., Sears Holdings Corp., Hosier, and Jankowski.[3] The district court granted summary judgment on the numerous claims Crisp alleged. On appeal, Crisp challenges the district court's grant of summary judgment on just the following claims: national origin discrimination, national origin retaliation, and aiding and abetting discriminatory practices.

## II.

We review a grant of summary judgment *de novo*. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). In doing so, we "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

---

[3] The district court subsequently granted Crisp's unopposed motion to dismiss all claims against Jankowski and Jankowski is not a party to this appeal.

No. 15-50214

## III.

Title VII and the Texas Labor Code both prohibit an employer from discharging an employee on account of the employee's national origin. 42 U.S.C. § 2000e–2(a)(1) (2013); Tex. Lab. Code § 21.051 (2013). Claims under these laws may be brought using either direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Crisp attempts to prove his case by using both types of evidence.

## A.

To establish national origin discrimination using workplace remarks as direct evidence, a plaintiff must show that the remarks: (1) relate to the plaintiff's national origin; (2) were proximate in time to the adverse employment decision; (3) were made by an individual with authority over that decision; and (4) relate to that decision. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996); *cf. Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (noting that a less stringent test applies when remarks are being used as one piece of a circumstantial case). The district court found that evidence was lacking for the last two requirements.

The Defendants argue as a preliminary matter that the Hitler and Nazi comments do not relate to Crisp's German origin, but rather were comments about his autocratic (that is, fascist) management style that could have been directed at a supervisor of any national origin with a similar attitude. Think of the "Soup Nazi" from *Seinfeld* who earned that nickname not for his national origin, but instead for his tyrannical management of his soup line. This may well be the most likely interpretation of the comments, especially given the lack of evidence indicating that Jankowski knew Crisp is a German–American. Complicating the question, however, is Crisp's assertion, which we must accept at this stage, that Jankowski noted his own Polish origin close in time to his making these remarks. It may therefore be a plausible, if unlikely, inference

4

that the comments did not relate to management style, but instead to ethnic tension between these bordering countries. We need not decide whether the remarks related to national origin, however, if the district court correctly granted summary judgment on the third requirement that the remarks be made by an individual with authority over the employment decision.

Jankowski was not directly involved in the termination decision and made no recommendation for termination. Balistee and Hosier terminated Crisp. Yet to show that the discriminatory remarks were made by an individual with authority over the adverse employment decision, we look not only to the formal decisionmaker, but also to lower-level employees who had "influence or leverage over the [formal] decisionmaker, such that it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). The relevant inquiry thus is whether Jankowski had influence over Balistee and Hosier's decision to fire Crisp. *See id.*

Under the governing case law, Janikowski did not have influence over the termination decision that would allow his alleged anti-German remarks alone to establish the entire case of discrimination. The only basis for such a ruling would be a finding that Janikowski's role as a factfinder of the investigation was tainted by his alleged discriminatory animus. Although in some instances such influence is sufficient to be imputed to the formal decisionmaker, we have held that when the plaintiff admits to the facts that would otherwise be tainted by the factfinder's animus, the factfinder no longer exhibits influence over the formal decisionmaker because any improper bias is removed by the plaintiff's own admission. *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 217–

18 (5th Cir. 2001)).[4] Crisp admitted to ordering his district managers in 2010 to not take markdowns without his approval, even if losses had been sustained, to increase the region's profit margins.   This was clearly and quite understandably against Sears's policy, which required that markdowns be sent to the Dallas Accounting Center "[e]very Thursday."  Crisp now contends that Sears's policy required him to train managers in the markdown procedures, and that he was requiring his approval on all markdowns simply to ensure that the managers were adequately trained.  But this is only an *excuse* for violating the every Thursday rule. It does not change Crisp's admission of the violation. The excuse also makes little sense as Crisp did not begin this markdown manipulation until 2010, two years after the formal policy was circulated in 2008.  Accordingly, Jankowski's discriminatory remarks are not imputed to the formal decisionmakers, Balistee and Hosier, because any discriminatory taint in the investigation's factfinding was removed by Crisp's own admission.  The district court correctly granted summary judgment on Crisp's attempt to prove national origin discrimination through direct evidence.

### B.

Crisp also tried to prove national origin discrimination the more common way: using circumstantial evidence.    Under    the    *McDonnell–Douglas* framework, a plaintiff must first make a prima facie case of national origin discrimination. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).  Then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the termination.  *See id.* at 378–79.  If the employer provides a legitimate nondiscriminatory reason, then the plaintiff must establish that this reason was pretextual by producing evidence of disparate treatment or by

---

[4] Although in *Laxton* the plaintiff relied on circumstantial evidence, rather than direct evidence, the plaintiff still had to prove that the oral statement she used as additional evidence of discrimination was made by a person with influence or leverage over the formal decisionmaker.  *Laxton*, 333 F.3d at 583.

No. 15-50214

showing that the employer's explanation is false or not believable. *See id.* at 379; *Laxton*, 333 F.3d at 578.

We will assume that Crisp made his prima facie case. Sears responded with ample evidence that it had a legitimate nondiscriminatory reason for terminating Crisp's employment: Crisp's admitted violation of the markdown policy. We must determine whether Crisp established pretext demonstrating that he had either experienced disparate treatment or that Sears's explanation is false or not believable. The district court correctly noted that Crisp produced no evidence to even try and show pretext in his summary judgment response, and as such, his argument on this point is foreclosed. In any event, the evidence he identifies on appeal fails to establish pretext.

Crisp argues that a reasonable juror could conclude that Sears's explanation is false or not believable because Sears's markdown policy also requires that Crisp train his managers in the markdown procedures. But, as discussed above, this provides Crisp with only an excuse for breaking Sears's every Thursday rule and does not show that Sears's explanation was false or not believable. He also argues that the payment of the April 2011 bonus establishes that the investigation exonerated him. The bonus, however, was received before the investigation's conclusion and indicates only that Sears did not punish him prematurely. Without further evidence, no reasonable juror could find that the bonus payment demonstrates that Sears's explanation is false.

**IV.**

Crisp also appeals the district court's grant of summary judgment on his retaliation claim. To establish a retaliation claim, a plaintiff must show that: "(1) he engaged in an activity [in opposing discrimination]; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between

No. 15-50214

the protected activity and the adverse employment action." *McDonnell Douglas* & *Lemaire*, 480 F.3d 383, 388 (5th Cir. 2007).

Although there is some doubt about whether Crisp engaged in protected activity,[5] we again assume that Crisp made a prima facie case for retaliation on the basis of his February 2011 confrontation with Jankowski and his March 2011 formal complaint with Sears's Office of Compliance and Ethics. Once again, however, Crisp is unable to rebut Sears's lawful explanation for terminating him. Crisp relies on the same pretext argument that Sears's markdown policy required him to train his managers, and therefore, he is excused from following the other parts of the policy, which required markdowns be submitted every Thursday. This pretext argument fails for the same reasons it did on the discrimination claim. We thus also affirm summary judgment on Crisp's retaliation claim.

## V.

Finally, we address the district court's granting of summary judgment on Crisp's claim that the corporate defendants violated Section 21.056 of the Texas Labor Code, which prohibits an employer from "aid[ing], abet[ing], incit[ing], or coerc[ing] a person to engage in a discriminatory practice." Tex. Lab. Code § 21.056 (2013).

It is difficult to discern the basis for this claim. In any event, because Crisp has failed to show any underlying discriminatory practice that anyone could have aided or abetted, this claim also fails.

## VI.

For these reasons, the judgment of the district court is AFFIRMED.

---

[5] As discussed above, the March 2011 complaint did not refer to the Nazi or Hitler comments or otherwise mention animus on the basis of national origin.