# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2021

Lyle W. Cayce
Clerk

No. 20-40837

JEANNETTE VASQUEZ-DURAN,

*Plaintiff—Appellant*,

*versus*

DRISCOLL CHILDREN'S HOSPITAL,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:19-CV-51

Before KING, HIGGINSON, and WILSON, *Circuit Judges*.
PER CURIAM:[*]

Driscoll Children's Hospital (Driscoll) terminated Jeannette Vasquez-Duran (Duran), a registered nurse, for misconduct. Following her termination, Duran sued Driscoll, asserting Title VII claims for hostile work environment, national origin discrimination, and retaliation. Driscoll moved

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-40837

for summary judgment, and the district court granted Driscoll's motion. Duran now appeals. Finding no error, we AFFIRM.

**I.**

Driscoll, a non-profit children's hospital in Corpus Christi, Texas, employed Duran from July 28, 2014, until her termination on December 28, 2017. From the beginning of her employment until August 27, 2017, Duran worked on Driscoll's Special Work Assignment Team (SWAT). As a SWAT nurse, Duran rotated through different units where Driscoll needed additional resources. Duran's supervisor in the SWAT unit was Michelle Lopez Goodman.

On June 13, 2017, Duran applied for transfer from the SWAT unit to Driscoll's Pediatric Intensive Care Unit (PICU). Trey Stice, the PICU director, selected Duran for the position. Stice and Goodman conferred about Duran's start date for the PICU unit, and Goodman informed Stice that Duran was needed in the SWAT unit for an additional two to three weeks to provide supplemental services in the Emergency Room (ER) and other units due to staffing contraints. Goodman then relayed this information to Duran, who expressed displeasure about not immediately starting in the PICU. On August 4, 2017, Duran disclocated her shoulder, so she was unable to work.[1] She then took three weeks of paid leave to recover. On August 27, 2017, Duran began working in the PICU.

Over the course of her employment, while working in both the SWAT and PICU units, Duran committed a series of infractions requiring disciplinary action and ultimately resulting in her termination. The first infraction occurred in January 2015. Duran received a "Formal Warning –

---

[1] According to Duran's deposition testimony, she intentionally injured her shoulder so that she did not have to continue working in the SWAT unit.

No. 20-40837

Documented Counseling" after an investigation revealed that Duran "failed on four separate occasions to dispense Ketamine from the automated dispensing cabinet and did not follow proper procedures for obtaining orders, returning medication, and documenting the waste." Despite the seriousness of this infraction, Driscoll gave Duran a second chance and required her to attend one-on-one remediation and individualized training on proper procedures for handling controlled substances. Duran had one other infraction while working in the SWAT unit. On February 13, 2016, Duran received a second documented counseling for having nine unscheduled absences over one year.

Notwithstanding Duran's infractions working in the SWAT unit, Driscoll indicated that her subsequent infractions working in the PICU ultimately resulted in her termination. On December 3, 2017, Duran was working in the PICU with another nurse, Eva Acebo. Acebo took a short break and returned to find Duran "messing" with a patient's Fentanyl Alaris Pump. Duran claimed that the pump was "alarming occluded" and that she was "fixing it." But after Acebo examined the pump, she noted that about 10 cc of Fentanyl was missing. Acebo immediately contacted the attending physician and the PICU Clinical Coordinator. The clinical coordinator called the RN House Supervisor, who in turn called PICU Director Stice. Stice came to the hospital, and he, the Clinical Coordinator, and the RN House Supervisor interviewed both Duran and Acebo.

The following day, Stice directed the Pharmacy Department to run reports on the patient, Duran, and Acebo. Driscoll also had the Alaris Pump taken to the Biomed Department, where the pump's data were downloaded and sent to the manufacturer to determine if there was a possible malfunction. The retrieved data indicated that the pump was hung at 7:54 p.m. by Acebo and paused at 8:27 p.m. by Duran. No alarm was ever triggered or recorded.

That same week, the Driscoll Pharmacy Director conducted an audit of Duran's and Acebo's medication/narcotics documentation from November 1, 2017, to December 3, 2017. The results for Acebo were all normal. But the results for Duran revealed "two (2) instances where [she] had administered Fentanyl when the patient had a pain score of zero (0) and four (4) separate instances (in a one month period) where she had administered Morphine contrary to the Doctor's pain score order."

As Driscoll's investigations continued, another incident occurred on December 20, 2017. Duran was watching another patient for a co-worker who had gone to get a cup of coffee. When the PICU Clinical Coordinator was informed that Duran was with the patient, he went to the patient's bedside and found Duran "doing something unusual at the IV Pumps." The Clinical Coordinator took over and determined that the pumps that Duran had been "messing with" contained Fetanyl and Versed infusions. He noted that the incident occurred between 1:20 and 1:25 a.m. After the nurse came back from getting coffee, the Clinical Coordinator reported to the PICU Director that the IV Pumps should be analyzed to determine what had occurred. The IV Pumps were then taken to the Biomed Department to download the relevant data, which were again sent to the manufacturer.

Following this incident, Driscoll placed Duran on paid administrative leave for the remainder of the investigation. When Driscoll finally received the report from the manufacturer, it indicated that the syringe containing Fentanyl was removed, reprogrammed, and re-installed, with approximately 1.5 ml less volume. Ultimately, Driscoll's audit findings showed that, at a minimum, Duran had violated the Standards of Nursing Practice assigned to RNs in the State of Texas by the Board of Nursing (BON) and that she had repeatedly, despite training and counseling, committed serious procedural

No. 20-40837

violations.[2]  On December 27, 2017, Driscoll representatives met with Duran, shared the results from the audit, and asked if she would resign. Duran did not resign.  So on December 28, 2017, Driscoll terminated her for violating the hospital's policies and procedures.

On May 3, 2018, Duran filed a Charge of Discrimination against Driscoll with the Equal Employment Opportunity Commission (EEOC). She alleged national origin discrimination and retaliation.  The Corpus Christi Human Relations Commission (CCHRC) investigated on behalf of the EEOC.  After completing its investigation, the CCHRC issued a determination of "no cause."  On November 14, 2018, the EEOC adopted the CCHRC's determination.  Two months later, Duran filed this action in state court.  Driscoll removed the action to federal court and, after the parties conducted discovery, Driscoll filed a motion for summary judgment.  On November 12, 2020, the district court granted summary judgment to Driscoll on all claims.  Duran timely appealed.

Duran asserts that the district court erred by dismissing her hostile work environment, Title VII discrimination, and retaliation claims.  Duran also generally contends that "public policy would be better served if [her] claims continue."  We address these issues in turn.

---

[2] The BON also investigated Duran's actions.  Following that investigation, Duran signed an Agreed Order with the BON, wherein the BON found that Duran "failed to document, and/or completely and accurately document, the administration of [Fentanyl Citrate] in the patient's Medication Administration Records and/or nurses' notes" and "failed to follow [Driscoll's] policy and procedures for wastage of the unused portions of [Fentanyl Citrate]."  However, the Agreed Order noted that in response to these findings, Duran "denies the allegations . . . ."

No. 20-40837

## II.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Hassen v. Ruston La. Hosp. Co., LLC*, 932 F.3d 353, 355 (5th Cir. 2019). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While all justifiable inferences are viewed in favor of the nonmovant, "barebones, conclusory, or otherwise-unsupported assertions [will not] cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" *Hassen*, 932 F.3d at 355–56 (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

## III.

### A. Hostile Work Environment

Duran first asserts that the district court erred in dismissing her hostile work environment claim. She states that "she affirmatively established each of the elements for a viable [h]ostile [w]ork [e]nvironment claim" and that her claim was "supported by sufficient facts to create a fact issue and should accordingly be allowed to proceed to trial on the merits." In response, Driscoll contends that Duran has abandoned her hostile work environment claim by failing to challenge the district court's conclusion that the claim is barred by the applicable 300-day statute of limitations.[3] We agree with Driscoll.

---

[3] Alternatively, Driscoll contends that Duran's claim fails on the merits and that Duran has waived any contention that the alleged conduct was sufficiently severe or persuasive to be actionable. Because we conclude that Duran has effectively abandoned

No. 20-40837

In its order, the district court concluded:

> Notably [Duran] does not point to any act of harassment that she alleges falls within the [300-day statute of limitations]. Nor does she attempt to refute Driscoll's arguments that no potentially actionable harassment under Title VII occur[ed] within the applicable period. . . . The [c]ourt agrees that [Duran] has failed to identify any potentially actionable conduct occurring within the 300 days that would give rise to the continuing violations exception. Therefore [Duran's] hostile work environment claim is barred by the statute of limitations.

On appeal, Duran fails to brief, or even address, the district court's conclusion that her hostile work environment claim is barred by the statute of limitations. The effect of Duran's failure to provide the "slightest identification of any error in [the district court's] legal analysis . . . is the same as if [she] had not appealed that judgment." *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). Accordingly, Duran has failed to demonstrate that the district court erred in dismissing her hostile work environment claim.

### B. *Title VII Discrimination*

Duran next asserts that the district court erred in dismissing her Title VII discrimination claim. According to Duran, she endured discrimination and was ultimately terminated because of her national origin.[4] Driscoll responds that the district court correctly concluded that Driscoll articulated a legitimate, non-discriminatory explanation for terminating Duran. Duran,

---

her hostile work environment claim by failing to address the district court's conclusion that it was time-barred, we do not reach these points.

[4] Duran's brief also references race discrimination; however, as noted by the district court, Duran only pled national origin discrimination, so that is all we address.

7

No. 20-40837

however, asserts that she provided sufficient evidence to create a genuine issue of fact as to whether Driscoll's proffered reason for terminating her was pretextual, or alternatively, that her national origin was also a "motivating factor" in her termination. Upon review of the record, we agree with the district court that Duran failed to provide sufficient evidence to create a genuine issue of material fact that she was terminated, even in part, due to her national origin.

In reviewing Title VII claims based on circumstantial evidence and alleged mixed motives, we use a modified *McDonell Douglas*[5] framework. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Under this approach,

> the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Id.* (citation and internal quotation marks omitted) (alteration in original).

Here, Driscoll does not challenge Duran's ability to establish a prima facie case of discrimination. Instead, Driscoll simply contends that it had a legitimate, non-discriminatory reason for terminating Duran—her mishandling of medications, including narcotics, on multiple occasions. Driscoll's "burden is only one of production, not persuasion, and involves

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

no credibility assessment," so we turn to whether Duran proved "that [Driscoll's] proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

To meet the pretext burden, a plaintiff must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, (1993).

The district court concluded that Duran "failed to meet her burden of producing sufficient evidence from which a reasonable trier of fact could conclude that Driscoll's explanation for terminating her was pretextual." We agree.   The record, which includes affidavits of several Driscoll employees, the BON's Agreed Order, and the CCHRC's and EEOC's "no cause" determinations, supports the conclusion that Duran was terminated for violations of the hospital's policies and procedures relating to dispensing, administering, and documenting the use of narcotics.[6]  By contrast, Duran fails to identify any evidence that Driscoll's reason for termination was pretextual.

We thus turn to the mixed-motive alternative, which requires a plaintiff to present evidence, direct or circumstantial, that "race, color, religion, sex, or national origin was a *motivating factor* for any employment

---

[6] In her brief, Duran herself infers as much, stating, "there are several pieces of evidence to suggest that Driscoll's decision was not based *solely* on [the] alleged deficiencies in Duran's performance." (emphasis added).

practice." *Desert Palace, Inc., v. Costa*, 539 U.S. 90, 99–101 (2003) (emphasis added).  Duran contends that she has succeeded in raising a genuine issue of material fact as to whether her national origin was a motivating factor in Driscoll's decision to terminate her.  She points to the following evidence to support her position: ethnic slurs co-workers made against her, Driscoll's denial of her rapid transfer request from the SWAT unit to the PICU (when Anglo/Caucasian nurses' transfers were expedited), and Driscoll's not requiring Anglo/Caucasian nurses to be drug tested following possible cocaine use by nurses in the PICU (though Duran was required to take a drug test when Fentanyl was missing).

In response, Driscoll denies Duran's allegation of ethnic slurs but asserts, even accepting that the slurs occurred as alleged, they fail to create a material fact issue.  Driscoll first contends Duran never raised this allegation before the EEOC and that it should thus be rejected.  Driscoll further provides that, as noted by the district court, almost all the alleged slurs "were made by employees who had no alleged nor demonstrated role in [Duran's] subsequent termination."  Finally, Driscoll asserts that most, if not all, of the alleged slurs "occurred during [Duran's] time in the SWAT unit . . . before [her] transfer to the PICU, where she committed serious misconduct that resulted in her termination."

We agree with the district court that Duran failed to create a fact issue based on alleged ethnic slurs.  To begin, while we liberally construe EEOC claims, "we will not consider claims that were not asserted before the EEOC or that do not fall within 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' a plaintiff makes before the EEOC."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).  And Duran did not raise these allegations in her EEOC charge.

Even considering Duran's slur allegations, she has failed to show that the district court erred by determining that the slurs did not create an issue of material fact regarding Driscoll's motives for terminating her.  The district court concluded the alleged slurs occurred before her transfer to the PICU and, further, could not be attributed to individuals with decision-making authority.   These conclusions render Duran's slur allegations meritless because

> [f]or comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (citation and internal quotation marks omitted) (second alteration in original). [7]

Duran's own deposition testimony supports the district court's conclusion.  In response to the question of "[w]hich nurses in the PICU at Driscoll . . . can support your claims in one way or another in this case," Duran stated, "I didn't have any incidents in the PICU with anything like this . . . .  So there's no witnesses in the PICU."  It thus follows that the alleged slurs could not have been "proximate in time to [Duran's] termination."  *Wallace*, 271 F.3d at 222.  (As stated above, Duran began working in the PICU in August 2017 and was ultimately fired for her misconduct in that unit in December 2017.)  And Duran has not presented

---

[7] *See also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000) ("[I]t is appropriate to tag the employer with an employee's [discriminatory] animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker."); *see also Rios v. Rossotti*, 252 F.3d 375, 379–80 (5th Cir. 2001) (applying *Russell*).

evidence that the alleged slurs were "made by an individual with authority over the employment decision at issue."[8] *See id.* Accordingly, the district court did not err in concluding that Duran failed to create a fact issue based on the alleged slurs.

Likewise, the district court correctly concluded that neither Duran's delayed transfer to the PICU nor Driscoll's required drug testing create a genuine issue of material fact sufficient to defeat summary judgment. As noted in the district court's order, Duran "fail[ed] to provide competent summary judgment evidence establishing that the delay in her transfer was due to national origin discrimination." Duran does not contest the district court's conclusion in her appellate brief nor does she cite any record evidence to the contrary.

And the uncontroverted summary judgment evidence directly contradicts Duran's claims regarding drug testing. Duran alleges that when cocaine was found in the PICU bathroom, Anglo/Caucasian nurses were not drug tested. We assume that her contention is that this indicates discrimination because Driscoll made her take a drug test when Fentanyl turned up missing. But even making that assumption, Duran has failed to show any discriminatory motives based on Driscoll's drug testing. Both Stice's deposition testimony and Duran's own affidavit provide that *everyone*

---

[8] Duran alleges that Stice once commented to someone that "he needed to watch [Duran] or be careful with [her] because he knew how Mexican women from El Paso were." However, she fails to brief how this single remark allegedly made on July 6, 2017, five months before her termination, showed "direct and unambiguous" evidence of discriminatory animus. *Wallace*, 271 F.3d at 222 (providing that to be probative of employer's discriminatory intent, a comment "must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [the employee's protected class] was a determinative factor in the decision to terminate the employee.") (quoting *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000)) (alteration in original).

working in the PICU was drug tested when cocaine was found in one of the PCIU bathrooms.[9]  Accordingly, the district court correctly concluded that Duran failed to provide sufficient evidence to create a genuine issue of material fact regarding Driscoll's drug testing.

In sum, Driscoll presented a legitimate, non-discriminatory reason for terminating Duran.  The burden was then on Duran to prove that "national origin was a *motivating factor* for any employment practice." *Desert Palace*, 539 U.S. at 99–101 (emphasis added).  But she presented no evidence—direct or circumstantial—to meet this burden.  Accordingly, the district court did not err in dismissing Duran's Title VII discrimination claim.[10]

### *C. Retaliation*

Lastly, Duran asserts the district court erred in dismissing her retaliation claim.  In this portion of her appellate brief, Duran makes various conclusory statements, does not provide a single record citation, and does not address the district court's opinion dismissing her retaliation claim.  Accordingly, Duran has effectively abandoned this issue, and we will not address it.  *City of Austin*, 943 F.3d at 1003 n.4; *Yohey*, 985 F.2d at 224–25; *see* FED. R. APP. P. 28(a)(8) ("[T]he appellant's brief must contain . . .

---

[9] In his deposition, Stice stated that around December 2017 Driscoll discovered an *unknown* white powder in a bathroom, but no one (including Duran) was drug tested in relation to the incident because the substance was not proven to be cocaine.  He further testified that when Driscoll actually found cocaine in a PICU restroom in 2019 (after Duran was terminated), Driscoll drug tested everyone working in the PICU, including the physician.  Duran's affidavit concedes that everyone in the PICU was drug tested after this incident.  We also note that there is no record evidence indicating that Duran was ever accused of cocaine use or asked to take a drug test for cocaine.

[10] To the extent Duran raises other alleged errors regarding her discrimination claim, Duran's assertions are conclusory and not briefed, so we do not address them.  *See City of Austin v. Paxton*, 943 F.3d 993, 1003 n.4 (5th Cir. 2019); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

No. 20-40837

appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."); *see also Brinkmann*, 813 F.2d at 748 ("On appeal, [appellant] does not address the merits of [the district court's] opinion, which we find quite persuasive. We will not raise and discuss legal issues that [appellant] has failed to assert.").

\*  \*  \*

For the reasons stated herein, the district court's judgment is

AFFIRMED.